BRUCE M. JOHNSON, PLAINTIFF-APPELEE v. SALLY JEAN JOHNSON, DEFENDANT-APPELLANT

No. 9328SC825

(Filed 3 May 1994)

**1. Divorce and Separation § 121 (NCI4th) — equitable distribution — account in wife's name — funds from wife's father — donative intent not shown — account as marital property**

The trial court in an equitable distribution action properly classified a savings account as marital property where most of the money in the account, which was in defendant's name only, came from defendant's father, but the only evidence of donative intent was defendant's statement that "my daddy wants me to have this and I'm going to keep it separate," and this evidence failed to show that the account in question met the definition of separate property under N.C.G.S. § 50-20(b)(2).

**Am Jur 2d, Divorce and Separation §§ 884-886.**

**2. Divorce and Separation § 136 (NCI4th) — equitable distribution — value of property — sufficient basis for determination**

The trial court in an equitable distribution action did not err in its valuation of a particular piece of property where the court based its valuation on the testimony of an expert witness as to appraisals of real estate.

**Am Jur 2d, Divorce and Separation §§ 937 et seq.**

**3. Divorce and Separation § 123 (NCI4th) — equitable distribution — husband's separate property — increase in value — percentage which was marital property — determination proper**

The trial court in an equitable distribution action did not err in its methodology and determination as to what portion of the increase in the value of plaintiff husband's separate

property, the parties' home, was marital property where the court acknowledged (1) the various improvements to the property and considered whether they were improvements increasing the fair market value of the property or whether they were more in the nature of ordinary upkeep and improvements, (2) the marital estate's contribution to the reduction of mortgage indebtedness, (3) the specific contributions to the property which came solely from plaintiff husband, and (4) the second mortgage taken out during the marriage to make improvements to the house and purchase a business.

**Am Jur 2d, Divorce and Separation § 891.**

Appeal by defendant from judgment entered 13 February 1993 by Judge Rebecca B. Knight in Buncombe County District Court. Heard in the Court of Appeals 18 April 1994.

*Edward P. Hausle, P. A., by Edward P. Hausle and Gum, Hillier & Friesen, P.A., by Howard L. Gum, for plaintiff-appellee.*

*Hyler & Lopez, P. A., by George P. Hyler, Jr. and Robert J. Lopez, for defendant-appellant.*

JOHNSON, Judge.

Plaintiff husband and defendant wife were married on 17 October 1981, separated on 21 September 1990, and divorced on 18 November 1991. This action originally was commenced as an action for absolute divorce. In later pleadings, both parties sought equitable distribution of their marital property. Both parties alleged an unequal distribution in their favor was equitable. A hearing on equitable distribution was held at the 9 November 1992 session of Buncombe County District Court. The parties made numerous stipulations before and during the trial as to various properties of the marriage. After ruling on the remaining properties, the trial court concluded that

[a]n unequal distribution is equitable. The Court basis [sic] this Conclusion on the fact that the Plaintiff made substantial payments on marital obligations subsequent to the date of separation. It is the Court's intention to divide equally the martial estate including equal responsibility for marital debt. In order to do equity between the parties, the Court must take into account that the Plaintiff has discharged the Defend-

ant's share of certain marital debts subsequent to the date of separation. Taking this into account, the Court determines that an unequal division in Plaintiff's favor is equitable.

From the equitable distribution judgment, defendant wife gave notice of appeal to our Court.

[1] Defendant first argues that the trial court incorrectly classified an account identified as the Asheville Federal Savings and Loan Account (hereafter, the Asheville Account) as marital property. It was stipulated that the Asheville Account had a balance of $5,175.20 on the date of separation and was in the name of defendant wife. Defendant testified that the money in the Asheville Account came from her father during the period she was married to plaintiff husband, and that she maintained the account because she "didn't seem to have much say so in what our joint account was spent for, and I thought well, my daddy wants me to have this and I'm going to keep it separate. I didn't have any say so over the other." On cross-examination, defendant testified that she received different amounts of cash between $100.00 and $1,500.00, that she did not file gift tax returns, and did not claim the money as income.

The trial court found the Asheville Account to be marital property, finding "[t]hat much of the monies in this account was deposited from cash funds received from the Defendant's father by the Defendant. There was insufficient evidence to support a finding of donative intent that this was a separate gift to the Defendant and the only evidence on that issue was the Defendant's statement 'he wanted me to have it'."

North Carolina General Statutes § 50-20(b)(1) (Cum. Supp. 1993) states that " '[m]arital property' means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property in accordance with subdivision (2) of this subsection." North Carolina General Statutes § 50-20(b)(2) (Cum. Supp. 1993) defines separate property as "all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage."

The trial court's task is to identify and classify

"property as marital or separate 'depending upon the proof presented to the trial court of the nature' of the assets." *Atkins v. Atkins*, 102 N.C. App. 199, 206, 401 S.E.2d 784, 787 (1991) (citation omitted). The party seeking to have property classified as marital or separate bears the burden of showing by a preponderance of the evidence that the property is marital or separate. *Id.* The party claiming the property to be marital meets this burden by showing that the property

(1) was 'acquired by either spouse or both spouses'; and (2) was acquired 'during the course of the marriage'; and (3) was acquired 'before the date of the separation of the parties'; and (4) is 'presently owned.'

*Id.* (citation omitted). If the party claiming the property to be marital shows these four elements by a preponderance of the evidence, the burden shifts to the party claiming the property to be separate to show by a "preponderance of the evidence that the property meets the definition of separate property under N.C.G.S. § 50-20(b)(2) [citations omitted]. "If both parties meet their burdens, then under the statutory scheme of N.C.G.S. § 50-20(b)(1) and (b)(2), the property is excepted from the definition of marital property and is, therefore, separate property." *Atkins*, 102 N.C. App. at 206, 401 S.E.2d at 788[.]

*Haywood v. Haywood*, 106 N.C. App. 91, 97-98, 415 S.E.2d 565, 569 (1992), *rev'd on other grounds*, 333 N.C. 342, 425 S.E.2d 696 (1993).

In the case *sub judice*, plaintiff husband has met the four part test stated in *Haywood* and thus, the burden that the Asheville Account was marital property. The question, then, is whether defendant wife has met her burden of showing by a preponderance of the evidence that the property meets the definition of separate property under North Carolina General Statutes § 50-20(b)(2) of a "gift."

Defendant argues that because her father gave this money to her, and she deposited it in the Asheville Account which was solely in her name, that the Asheville Account should be classified as her separate property. However, the only evidence which has been presented indicating donative intent as to this gift is defendant's testimony that "I thought, well, my daddy wants me to have this and I'm going to keep it separate." We agree with the trial court that defendant has not met the burden of showing by

a preponderance of the evidence that the Asheville Account meets the definition of separate property under North Carolina General Statutes § 50-20(b)(2). We reject defendant's argument asserting otherwise.

[2] Defendant next contends the trial court committed prejudicial error and abused its discretion in its valuations of the 153 Upper Flat Creek Road property (plaintiff husband's separate property) on the date of the marriage and on the date of separation. Defendant notes that "[p]laintiff purchased the Upper Flat Creek real estate in the fall of [1977] for $47,000. The Trial Court found as a fact that the fair market value of such realty was $77,500 on the date of the marriage (10-17-81) and $92,000 on the date of the separation (9-21-90) which were Appraiser Morris' appraised figures." Defendant argues that because this shows a $30,500 increase in property value over the four year period from 1977-1981, and only a $14,500 increase in property value over the nine year period from 1981-1990, these findings cannot be supported by competent evidence. We disagree.

Mark Morris was tendered as an expert witness as to appraisals of real estate property and testified as to the values of the property on the date of marriage (1981) and on the date of separation (1990). When asked about the apparent inconsistency concerning the appreciation from 1977-1981 and from 1981-1990, Mr. Morris said

[t]he first initial period you had rapid inflation of the eighties. The second period you have a decline in condition of property. You have other items. Inherent in the definition of market value is the ability to obtain financing, purchase financing. My value as of 1990 reflected incomplete condition. You cannot get — purchase — financing from F.H.A. or V.A. or some form of conventional on a house that's incomplete.

When asked about differences in adjustments made in the two values, Mr. Morris testified that the reduction made in the 1990 value was due to the remoteness of the property and would not have reduced the property value in 1981 because it was then typical of the area, and that a reduction was also made in the 1990 value for incomplete construction.

"Our review of equitable distribution orders is limited to determining whether the court clearly abused its discretion." *Wieneck-*

*Adams v. Adams,* 104 N.C. App. 621, 623, 410 S.E.2d 525, 526 (1991), *aff'd,* 331 N.C. 688, 417 S.E.2d 449 (1992). We find there has been no abuse of discretion by the trial court in that the trial court properly considered the testimony of the tendered expert, Mr. Morris, concerning the valuations of the 153 Upper Flat Creek Road property.

**[3]** Next, defendant argues that the trial court committed prejudicial error and abused its discretion in its methodology and determination as to what portion of the increase in the value of the 153 Upper Flat Creek Road property was marital property. The trial court's task was to determine which portion of the appreciation of plaintiff husband's separate property, the 153 Upper Flat Creek Road property, was considered active appreciation and therefore a marital asset. *See Ciobanu v. Ciobanu,* 104 N.C. App. 461, 409 S.E.2d 749 (1991).

In so determining, the trial court found:

(m) That the Plaintiff made improvements to the property after the date he purchased it and prior to the date of the marriage. The Plaintiff made an initial down payment at the time of purchase in the amount of $10,500.00, said sum from his separate property. That after the Plaintiff purchased the real property, he made some improvements including grading work and landscaping valued at $2,800.00; reconstruction of a bridge, the only means of ingress and egress to the property, that was washed out in a storm at a cost of $2,800.00; a solar "sun room"; and commenced construction on a garage. The Plaintiff was unable to provide evidence as to the value of these last two improvements. The Plaintiff also put in new carpet at a cost of $2,100.00 and window treatments at a cost of $800.00. That as to these expenditures the only ones that increased the appraised fair market value of the real estate were the grading and bridge repair valued at $5,600.00. The other repairs were more in the nature of ordinary upkeep and improvements.

(n) That the Plaintiff and Defendant made improvements to the home since the date of marriage and prior to the date of separation including pouring of a concrete slab on the deck, planting trees and shrubs, constructing a "shell" of 24 × 24 feet for a room addition on the second floor; cedar siding improvements, roofing additions and improvements; six new win-

dows, an outdoor storage building, and completing and enclosing the garage. That these improvements were contributions by the marital estate to marital investment in the Defendant's separate property.

(o) That the marital estate also contributed to the investment in the Plaintiff's separate property to the extent it reduced the mortgage indebtedness with Asheville Federal Savings and Loan, to-wit: $11,649.77 ($35,722.66 – $24,072.89).

(p) The calculation of the marital interest in such property should be made in such a way as to entitle both the separate estate and the marital estate to an interest in the property in the ratio its contribution bears to the total investment in the property.

(1) Plaintiff's separate contributions consisted of the down payment of $10,500.00, closing costs of an additional $2,000.00, improvements that added value in the sum of $5,600.00, and $777.34 in principal reduction of the original mortgage of $36,500.00 made by Plaintiff prior to separation. Thus, the contributions made by the Plaintiff from his separate estate total $18,877.34.

(2) The marital estate made contributions of $11,649.77 (the principal reduction on the first mortgage). As found above, during the marriage, improvements were made but from the evidence offered by the Defendant, the Court is unable to determine the fair market value added to the property as a result of such improvements. Some of the improvements made during the marriage of these parties would be in the nature of routine maintenance and upkeep which were designed to maintain the value of the property and keep it from deteriorating rather than actually increasing the value of the property and the Defendant has offered insufficient evidence upon which the Court can make a determination on this issue. The marital contributions to the increase in fair market value of the marital estate are, therefore, $11,649.77, the amount of principal reduction on the first mortgage.

(3) Due, in part, to the second mortgage that was taken out during the marriage, the increase in equity (net fair market value) during the marriage is $10,946.38; $52,723.72 (equity date of separation) minus $41,777.34 (equity date of marriage).

JOHNSON v. JOHNSON

[114 N.C. App. 589 (1994)]

As determined above, the contributions of Plaintiff's separate estate were $18,877.34 and the contributions of the marital estate were $11,649.77 yielding total contributions of $30,357.11.

In order to make a distribution practical, the Court will award the property at 153 Upper Flat Creek Road to the Plaintiff and assign to the Plaintiff the responsibility to discharge the second mortgage. In this fashion, the Court will achieve a distribution of both the marital interest in the Upper Flat Creek Road Property and the marital debt represented by the second mortgage on said property. In order to properly account for the marital interest, the Court will determine the ratio of the contributions made by Plaintiff's separate estate and the marital estate and apply that ratio to the increase in equity that occurred during the marriage.

The marital estate contributed 38.16 percent of the total contributions ($10,946.38 [divided by] 30,357.11). 38.16 percent of $10,946.38 is $4,177.14 and this is determined to be the value of the marital interest in the Upper Flat Creek Road Property to be awarded to Plaintiff.

We have reviewed the record and are not convinced that the trial court erred in its determination of which portion of the appreciation of the 153 Upper Flat Creek Road property was considered active appreciation and therefore a marital asset. We note that the trial court acknowledged the various improvements to the property and considered whether they were improvements increasing the fair market value of the property or whether they were more in the nature of ordinary upkeep and improvements; the marital estate's contribution to the reduction of mortgage indebtedness with Asheville Federal Savings and Loan; the specific contributions to the property which came solely from plaintiff husband; and the second mortgage taken out during the marriage, "obtained during the marriage for the purpose of (1) making improvements to the house and (2) purchase of the Dairy Queen business." As a result, we find there has been no abuse of discretion by the trial court, and that the trial court properly determined which portion of this property was marital property.

Defendant's next argument, that the trial judge committed prejudicial error in its distribution of marital assets, is based on de-

fendant's previous arguments. Having rejected those previous arguments, we dismiss this argument.

Finally, defendant argues that the trial court committed prejudicial error in overruling defendant's counsel's objections and thus allowing testimony as to what money was used or invested to buy front-end loaders; as to the price and/or the cost of and/or the value of the labor to do the work that plaintiff performed, and as to the cost of labor and materials to reconstruct a bridge. We note there are no findings of fact, conclusions of law or references to the front-end loaders in the Equitable Distribution Judgment, and therefore can ascertain no showing of prejudice to defendant. As to defendant's argument regarding the price and/or cost of and/or the value of the labor to do the work that plaintiff performed and as to the cost of labor and materials to reconstruct a bridge, we have reviewed the transcript and find that the trial court properly ruled on these objections.

The judgment of the trial court is affirmed.

Judges WELLS and JOHN concur.