DOUGLAS GORDON BRACKNEY, PLAINTIFF v. ROBIN MASON BRACKNEY, DEFENDANT

No. COA08-1044

(Filed 1 September 2009)

**1. Divorce— equitable distribution—marital property— house—source of funds rule**

The trial court did not err in an equitable distribution action by classifying a house as marital property where marital funds were used for the down payment and for further equity; the parties had not closed on the house at the time of separation; plaintiff obtained a mortgage and closed on the house; and plaintiff did not present evidence of any amount of mortgage principal that he paid using his separate property after separation.

**2. Divorce— equitable distribution—divisible property—appreciation on house—passive**

The trial court did not err in an equitable distribution action by classifying appreciation on a house as divisible property

where plaintiff's actions preserved the marital estate's down payment and the right to purchase, but the subsequent appreciation was the result of market forces rather than any action by plaintiff.

**3. Divorce— equitable distribution—equal division of property—plaintiff's preservation efforts**

The trial court did not err in an equitable distribution action by ordering an equal distribution of property. Plaintiff argued that the trial court ignored plaintiff's preservation efforts, but the findings showed that the court considered and weighed those efforts.

**4. Divorce— equitable distribution—illicit drug use—reduction in income—weight given to evidence**

The trial court did not abuse its discretion in an equitable distribution case in the weight it gave to defendant's illicit drug use for her reduction in income where there were extensive findings about defendant's drug use and earnings.

**5. Divorce— equitable distribution—attorney fees—debt**

The trial court did not err in an equitable distribution action in its consideration of defendant's attorney fees under N.C.G.S. § 50-20(c)(1) where the court included her attorney fees in her debt. The evidence indicated that a major liability for defendant is her attorney fees, and plaintiff has not challenged the finding of the amount of debt, including those fees, and plaintiff did not cite authority that a liability based on attorney fees should be treated differently from other liabilities.

Appeal by plaintiff from judgments entered 10 January 2008 and 25 February 2008 by Judge Chester C. Davis in Forsyth County District Court. Heard in the Court of Appeals 24 March 2009.

*Tash & Kurtz, PLLC, by Jon B. Kurtz, for plaintiff-appellant.*

*Robinson & Lawing, LLP, by Kevin L. Miller, for defendant-appellee.*

GEER, Judge.

Plaintiff Douglas Gordon Brackney appeals from the trial court's equitable distribution judgment providing for an equal distribution of property between plaintiff and defendant Robin Mason Brackney. Plaintiff's primary contention on appeal is that the trial court erred in

its classification of a home and its appreciation in value that the parties, prior to separation, had only contracted to purchase, but that plaintiff, following the separation, had purchased using marital funds and a mortgage he obtained in his own name. We hold that the trial court properly determined, under the "source of funds" rule, that the house was marital property because plaintiff used only marital funds to purchase the home. The fact that he also obtained a mortgage in his own name to pay for the house does not grant him any separate equity interest in the home and, under controlling authority, does not transform any portion of the house into separate property. Further, as stipulated by plaintiff, the house appreciated in value due solely to passive market forces, and, therefore, the trial court correctly classified the home's appreciation as divisible property rather than plaintiff's separate property. Because we also find plaintiff's remaining arguments unpersuasive, we affirm.

## Facts

Plaintiff and defendant were married on 19 June 1999. Their daughter, who was born on 12 November 2002, suffered from a congenital central nervous system disorder. To accommodate their daughter's special needs, the parties entered into a contract ("the Ballincourt contract") with Keith Rogers Homes, Inc. on 8 August 2003 to build a single-level home on Ballincourt Lane in Winston-Salem, North Carolina ("the Ballincourt house"). The total price for the Ballincourt house was $434,000.00, with the contract requiring a 10% down payment of $43,400.00 at the time of execution of the contract followed by payment of the balance of the purchase price—$390,600.00—at closing.

The parties took out an equity line of credit on the house in which they were living at the time, located on Century Oaks Lane, also in Winston-Salem ("the Century Oaks house"). They drew $43,400.00 on that line of credit to use as the down payment on the Ballincourt house. Plaintiff had purchased the Century Oaks house prior to the marriage, but after refinancing the home in February 2002, the property was held as a tenancy by the entirety.

The parties' daughter died on 25 August 2003. The parties sold the Century Oaks house on 23 September 2003, netting approximately $95,000.00. From these funds, they used $43,400.00 to pay off the equity line of credit, with the remaining funds (approximately $51,600.00) being deposited in plaintiff's banking account. After the sale of the Century Oaks house, the parties moved into an apartment.

BRACKNEY v. BRACKNEY

[199 N.C. App. 375 (2009)]

Plaintiff and defendant separated on 6 February 2004. At the time of their separation, the Ballincourt house was not completed, and they had not closed on the house. Plaintiff filed a complaint on 14 April 2004, requesting equitable distribution of the parties' marital and divisible property. In his complaint, plaintiff also moved for an interim allocation of the Ballincourt "residence and all rights and liabilities under the [Ballincourt contract]." The Ballincourt contract included a provision that the $43,400.00 down payment would be forfeited to Keith Rogers Homes if the parties failed to close on the house by a specified date.

The trial court entered an Order for Interim Allocation on 14 May 2004, in which the court found that "in order to *preserve the marital estate*, it is necessary that the Court make an interim allocation of [the Ballincourt house] and all rights and liabilities under the [Ballincourt contract] . . . ." (Emphasis added.) The trial court then allocated to plaintiff the Ballincourt house and the rights to the Ballincourt contract, providing:

> That said down payment and funds used to acquire equity in the [Ballincourt house] are subject to Defendant's rights to an equitable distribution of property, both as marital and divisible property notwithstanding any documents required by the Defendant in order that the Plaintiff purchase said residence, Defendant's rights and claims to said property are preserved until an equitable distribution of marital and divisible property and this Order shall be taken into consideration at an equitable distribution trial and proper credit given to the parties.

Plaintiff closed on the Ballincourt house on 25 May 2004 for a total purchase price of $434,000.00. Plaintiff obtained a loan from Coastal Mortgage Services, Inc. to cover $345,000.00 of the purchase price. Of the $89,000.00 difference, $43,400.00 had already been paid by the parties as a down payment on the house, and plaintiff used the proceeds of the sale of the Century Oaks house for the remaining $45,600.00. Plaintiff later obtained a second loan on the Ballincourt house in February 2005.

Defendant filed an answer with counterclaims on 22 June 2004. Defendant sought an equitable distribution in her favor and an interim allocation to support herself. She also asserted counterclaims for post-separation support, alimony, and attorneys' fees, as well as a counterclaim alleging assault by plaintiff. On 6 August 2004, plaintiff

filed a reply and motion to dismiss defendant's counterclaims. The parties ultimately divorced on 16 May 2005.

The Ballincourt house was appraised on 10 May 2005 at a fair market value of $480,000.00. In preparation for trial, the house was re-appraised on 11 September 2007 at a fair market value of $615,000.00. The parties stipulated that the house had appreciated in value by $181,000.00.

The trial court held equitable distribution hearings on 23 and 30 October 2007. The trial court indicated in its ultimate order that "[t]he issues for determination at trial were: (1) what is the marital interest in the Ballincourt House, if any; (2) what is Plaintiff's separate interest in the Ballincourt House, if any; (3) what portion of the $181,000.00 appreciation in value of the Ballincourt House is divisible property, if any; and (4) how should the marital and divisible property interests in the Ballincourt House, if any, be distributed."

In a Judgment of Equitable Distribution and Order entered 10 January 2008, the trial court answered these questions by finding, first, that the Ballincourt house was marital property because it had been purchased with funds from the sale of the Century Oaks house, which was wholly marital property. The trial court further found that plaintiff had not acquired any separate property interest in the Ballincourt house as plaintiff's procurement of the $345,000.00 mortgage loan did not "constitute[] a contribution of his separate funds to the Ballincourt House."

As for the post-separation appreciation in the value of the Ballincourt house, the trial court found that the $181,000.00 was entirely divisible property: "While Plaintiff's closing on the Ballincourt House may have preserved the marital estate's down payment of $43,400, the post-separation appreciation was not caused by or the 'result of' the closing within the meaning of N.C.G.S. § 50-20(b)(4)a. Rather, the post-separation appreciation in the value of the Ballincourt House was the result of market forces alone, as stipulated by the Parties."

As for the distribution of the marital and divisible property, the trial court noted, in its order, that

the Court specifically asked each Party and his or her counsel whether they had any evidence to present or argument to be made concerning each of the distributional factors set forth in N.C.G.S. § 50-20(c). After reviewing each of the distributional fac-

tors with each of the Parties and his or her counsel, the Parties and their counsel stated to the Court that they only wanted to present evidence concerning distributional factors (c)(1), (3), (5), (6), (7), 11(a) [sic] and (12).

The trial court then made findings of fact as to all the factors in the statute, including identifying those factors on which evidence was presented (even if not argued by the parties) and noting the factors on which no evidence had been presented.

The trial court further stated in its order that in determining how to distribute the parties' marital and divisible property, it "weigh[ed] [the statutory factors] in order of importance from most to least important as follows":

   a. Plaintiff's income of $150,000-$200,000 per year;

   b. Plaintiff's assets of $143,000.00;

   c. Defendant's income of $0;

   d. Defendant's negative net worth of—$85,000;

   e. Plaintiff's contribution of a substantial amount of separate property to the marital estate;

   f. Defendant's age of 38 years and poor mental health, and fair physical health;

   g. Plaintiff's age of 49 years and excellent physical and mental health;

   h. Plaintiff's expectation of stock options and retirement benefits at Liberty Hardware;

   i. Plaintiff's preservation of the marital assets by closing on the Ballincourt House, not withdrawing the equity in the Ballincourt House, and not permitting the foreclosure of the Ballincourt House;

   j. The length of the marriage in the amount of 4 and 2/3rds years;

   k. Defendant's wasting of marital and separate assets since separation, including the use of some such assets to purchase illicit drugs, and Defendant's use of illicit drugs as recently as ten (10) weeks prior to trial;

   l. The fact that the $181,000 of post-separation increase in the value of the Ballincourt House was totally passive[.]

The trial court explained in its order that it had decided to give little or no weight to factors N.C. Gen. Stat. § 50-20(c)(6) and (c)(7), although both factors had been argued by defendant.

As a result of its weighing of the N.C. Gen. Stat. § 50-20(c) factors, the trial court determined that an equal distribution was equitable. Based on the disparity in the amount of marital and divisible property in each party's possession, the trial court ordered plaintiff to pay a distributive award of $126,101.87 to defendant. On 25 February 2008, the trial court entered an amended judgment and order, in which the court found that "there is no just reason to delay appeal" of its prior judgment and order and certified it for immediate appellate review under Rule 54(b) of the Rules of Civil Procedure. Plaintiff timely appealed to this Court.[1]

## Discussion

Equitable distribution is governed by N.C. Gen. Stat. § 50-20 (2007), which requires the trial court to conduct a three-step process: (1) classify property as being marital, divisible, or separate property; (2) calculate the net value of the marital and divisible property; and (3) distribute equitably the marital and divisible property. *Cunningham v. Cunningham*, 171 N.C. App. 550, 555, 615 S.E.2d 675, 680 (2005). A trial court's determination that specific property is to be characterized as marital, divisible, or separate property will not be disturbed on appeal "if there is competent evidence to support the determination." *Holterman v. Holterman*, 127 N.C. App. 109, 113, 488 S.E.2d 265, 268, *disc. review denied*, 347 N.C. 267, 493 S.E.2d 455 (1997). Ultimately, the court's equitable distribution award is reviewed for an abuse of discretion and will be reversed "only upon a showing that it [is] so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

I

**[1]** Plaintiff first contends that the trial court erred in classifying the Ballincourt house as marital property and the $181,000.00 apprecia-

---

1. We note that because two of defendant's counterclaims remain pending, this appeal is from an interlocutory order. Nevertheless, the order is final as to the equitable distribution claims, and the trial court included the proper Rule 54(b) certification in the amended order. The appeal is, therefore, properly before this Court. *See Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (holding that when trial court certifies final judgment or order "for immediate appeal under Rule 54(b), appellate review is mandatory").

BRACKNEY v. BRACKNEY

[199 N.C. App. 375 (2009)]

tion in its value as divisible property. With respect to this issue, the trial court made the following unchallenged finding of fact:

> [I]n August and September, 2003, the Parties contracted to begin building a new house, known as the "Ballincourt House," and sold their existing house, known as the "Century Oaks House." The Century Oaks House had been purchased by Husband prior to the marriage, but had been re-titled tenancy-by-the-entireties during the marriage. Upon the sale of The Century Oaks House in September, 2003, the Parties received at least $95,000 in sales proceeds, which proceeds the Parties have stipulated was marital property. At the time of the Parties' separation on February 6, 2004, $43,400.00 of the Century Oaks House proceeds had been invested by the Parties as a down payment on the Ballincourt House. Following the Parties' separation, Plaintiff closed on the Ballincourt House on May 25, 2004. At the closing of the Ballincourt House, the $434,000.00 purchase price was paid with Eighty-Nine Thousand Dollars ($89,000) of the Century Oaks House proceeds (inclusive of the $43,400.00 down payment) and Three Hundred Forty-Five Thousand Dollars ($345,000.00) of funds Plaintiff borrowed from Coastal Mortgage Services, Inc. The Parties stipulated that, as shown in a September 11, 2007 appraisal, the fair market value of the Ballincourt House as of the time of trial and distribution was and is $615,000.00, such that between May 25, 2004 and the time of trial and distribution, the Ballincourt House appreciated in value by $181,000. . . .

Plaintiff contends that the trial court erred in finding that the Ballincourt house was marital property and should, instead, have found that only the initial down payment and offer to purchase and contract was marital property. With respect to the Ballincourt house's subsequent appreciation in value, plaintiff argues that it should all be considered plaintiff's separate property due to his active efforts in preserving the property by obtaining the mortgage and closing on the property. Plaintiff acknowledges that he has found no case law directly supportive of his specific contentions.

N.C. Gen. Stat. § 50-20(b)(1) (2007) defines "[m]arital property" as "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned." In contrast, "[s]eparate property" includes "all real and personal property acquired by a spouse before marriage or acquired by a spouse by

BRACKNEY v. BRACKNEY

[199 N.C. App. 375 (2009)]

bequest, devise, descent, or gift during the course of the marriage." N.C. Gen. Stat. § 50-20(b)(2). In equitable distribution proceedings, the party claiming a certain classification has the burden of showing, by a preponderance of the evidence, that the property is within the claimed classification. *Joyce v. Joyce*, 180 N.C. App. 647, 650, 637 S.E.2d 908, 911 (2006).

Plaintiff's argument that the Ballincourt house itself can be deemed "appreciation" of the value of the down payment and offer to purchase and contract mistakes the law regarding marital property. It is well-established, as this Court held in *Peak v. Peak*, 82 N.C. App. 700, 704, 348 S.E.2d 353, 356 (1986), that "property acquired in exchange for marital funds is considered marital property to the extent of the contribution even after separation." *Accord Freeman v. Freeman*, 107 N.C. App. 644, 651, 421 S.E.2d 623, 626-27 (1992) (holding that property acquired after separation may be classified as marital if "the source of funds used to acquire the property is marital"); *Talent v. Talent*, 76 N.C. App. 545, 554-55, 334 S.E.2d 256, 262 (1985) (holding that trial court erred in finding property purchased after separation to be entirely separate property when evidence showed husband used marital funds for down payment on property, explaining "[t]he fact that this marital property was used to acquire other property after the date of the parties' separation did not cause it to lose its marital character"), *superseded on other grounds by statute as recognized in Rhew v. Rhew*, 138 N.C. App. 467, 531 S.E.2d 471 (2000); *Phillips v. Phillips*, 73 N.C. App. 68, 75, 326 S.E.2d 57, 61 (1985) (holding that although husband gave wife funds to purchase condominium after separation, "[i]f the funds [the husband] gave [the wife] were marital funds, then their exchange for other property after separation does not convert them into separate property").

In this case, the evidence reveals that $89,000.00 of marital funds were used to purchase the Ballincourt house. Prior to separation, the marital estate had $43,400.00 invested in the house as a down payment and had $45,600.00 in a bank account. At the closing on the Ballincourt house, the $45,600.00 in marital funds was exchanged for further equity in the Ballincourt house. As a result, the marital estate had an equity interest worth $89,000.00 in the Ballincourt house. Thus, the Ballincourt house was acquired in exchange for marital property and, therefore, constitutes marital property unless plaintiff demonstrates that some portion of the property was acquired by the use of his separate funds.

BRACKNEY v. BRACKNEY

[199 N.C. App. 375 (2009)]

Of primary importance, here, is the fact that "North Carolina has adopted the 'source of funds' rule in determining whether property is marital or separate." *McIver v. McIver*, 92 N.C. App. 116, 124, 374 S.E.2d 144, 149 (1988). According to the source of funds rule, "when both the marital and separate estates contribute *assets* towards the acquisition of property, each estate is entitled to an interest in the property in the ratio its contribution bears to the total investment in the property." *Wade v. Wade*, 72 N.C. App. 372, 382, 325 S.E.2d 260, 269 (emphasis added), *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985).

Plaintiff contends that "his procurement of borrowed funds, *i.e.*, the Coastal Mortgage Services, Inc. loan in the amount of $345,000, constituted a contribution of his separate funds to the Ballincourt House." This view is not in accord with North Carolina precedent. Under the source of funds rule, "acquisition is an on-going process," and "property is 'acquired' *as it is paid for*." *McLeod v. McLeod*, 74 N.C. App. 144, 148, 327 S.E.2d 910, 913 (emphasis added), *cert. denied*, 314 N.C. 331, 333 S.E.2d 488 (1985), *overruled in part on other grounds by Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430 (1986). As one leading family law commentator has explained with respect to secured debt:

> If property is *acquired* when the parties reduce the principal balance of a secured debt, property is logically not *acquired* to the extent that the principal balance of that debt remains unpaid. In other words, to the extent that the secured debt has not yet been repaid, the property has not yet been equitably *acquired* at all. *The mere assumption of debt, without more, does not constitute a contribution to the acquisition of property.*

Brett R. Turner, *Equitable Distribution of Property* § 5:26 (3d ed. 2005) (emphasis added).

Mr. Turner's analysis is consistent with this Court's rationale in cases deciding the extent of a separate interest in property owned prior to a marriage that became partially marital property during the marriage. In *Johnson v. Johnson*, 114 N.C. App. 589, 595-96, 442 S.E.2d 533, 537-38 (1994), this Court upheld the trial court's determination that the husband's separate property interest in real estate classified as "mixed" property was the sum of the husband's premarital down payment and closing costs, improvements to the property that increased its value, and mortgage principal reduction payments, but not the outstanding mortgage principal. Similarly, in

*Mishler v. Mishler*, 90 N.C. App. 72, 76, 367 S.E.2d 385, 387, *disc. review denied*, 323 N.C. 174, 373 S.E.2d 111 (1988), this Court upheld the trial court's formula for determining the husband's separate contribution to "mixed" real estate as the sum of his premarital down payment, plus principal payments, minus outstanding mortgage debt on the property.

Under the facts of this case, we see no reason—and plaintiff has not provided one—why *Johnson's* and *Mishler's* holdings regarding premarital secured debt should not apply with equal force to postseparation secured debt. Thus, plaintiff's obtaining a mortgage on the Ballincourt house is not an "acquisition" of a separate property interest in the house. It is the paying off of the mortgage principal that would constitute the acquisition. With respect to any payments of principal, plaintiff did not assign error to or challenge on appeal the trial court's finding that "Plaintiff presented no evidence that he made payments to reduce the principal owed on either of [the] Ballincourt loans, nor did Plaintiff quantify the total amount of principal reduction, if any, from [the date of closing] until the date of trial."

In sum, under the source of funds approach, since the Ballincourt house was purchased with entirely marital funds, and plaintiff failed to present evidence of any amount of mortgage principal that he paid off using his separate property after separation, we conclude that the Ballincourt house is entirely marital property. The trial court, therefore, did not err in classifying it as such.

[2] The next question is whether the trial court erred in classifying the house's $181,000.00 in appreciation as divisible property. N.C. Gen. Stat. § 50-20(b)(4)(a) states that "[a]ll appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution" is to be classified as divisible property. The major exception is that "appreciation or diminution in value which is the result of postseparation actions or activities of a spouse shall not be treated as divisible property." *Id.* Thus, under the statute, there is a distinction between active and passive appreciation when classifying divisible property. *See* Suzanne Reynolds, 3 *Lee's North Carolina Family Law* § 12.52(b)(i) (5th ed. 2002) [hereafter *Lee's Family Law*] ("The General Assembly has given divisible property status only to passive increases in value of marital and divisible property.").

"[P]assive appreciation" refers to enhancement of the value of property due solely to inflation, changing economic conditions, or

market forces, or other such circumstances beyond the control of either spouse. *O'Brien v. O'Brien*, 131 N.C. App. 411, 420, 508 S.E.2d 300, 306 (1998), *disc. review denied*, 350 N.C. 98, 528 S.E.2d 365 (1999). *See Lee's Family Law* § 12.52(b)(i) ("[P]assive forces include interest, inflation, market forces, government action, labor of third parties, and contributions of separate funds. If these or similar forces cause a postseparation change in value of marital property before the date of distribution, then the [trial] court should classify the change in value as divisible property."). "Active appreciation," on the other hand, refers to "financial or managerial contributions" of one of the spouses. *O'Brien*, 131 N.C. App. at 420, 508 S.E.2d at 306. *See also Lawing v. Lawing*, 81 N.C. App. 159, 176, 344 S.E.2d 100, 112 (1986) (distinguishing between active increases such as "funds, talent or labor" and "passive increases due to interest and rising land value").

The critical issue under N.C. Gen. Stat. § 50-20(b)(4)(a) (emphasis added) is whether the increase or decrease in the value of the subject property is *"the result of"* post-separation actions or activities of a spouse. *See Lee's Family Law* § 12.52(b)(i) (noting that General Assembly has "classif[ied] as divisible property all postseparation changes in value unless those changes are 'the result of postseparation actions or activities of a spouse.' " (quoting N.C. Gen. Stat. § 50-20(b)(4)(a))). Plaintiff contends that his active efforts to close on the Ballincourt house are what render the $181,000.00 his separate property and not divisible property.

We note first that plaintiff's argument is inconsistent with the trial court's order making an interim allocation to plaintiff of the right under the Ballincourt contract to close on the house "in order to preserve the marital estate," but expressly providing that "the Defendant's rights and claims to said property shall be preserved until an equitable distribution of marital and divisible property . . . ." Plaintiff's contention that he is entitled to the Ballincourt house's appreciation as his own separate property because his acts of preservation provided the opportunity for the property to appreciate in value conflicts with the order's directive that defendant's marital and divisible property claims would be preserved notwithstanding plaintiff's actions.

In any event, with respect to this issue, the trial court determined in its equitable distribution order: "While Plaintiff's closing on the Ballincourt House may have preserved the marital estate's down payment of $43,400, the post-separation appreciation was not caused by

or the 'result of' the closing within the meaning of N.C.G.S. § 50-20(b)(4)a. Rather, the post-separation appreciation in the value of the Ballincourt House was the result of market forces alone, as stipulated by the Parties."

We agree with the trial court that the fact that the Ballincourt house, valued at $480,000.00, was part of the marital estate was due to plaintiff's efforts to preserve the marital estate, as permitted by the trial court's interim allocation award. The $181,000.00 increase in the value of the house following the closing was not the result of any efforts by plaintiff, but rather was, as stipulated by plaintiff at trial, solely the result of passive market forces. The appreciation, therefore, is by definition divisible property under N.C. Gen. Stat. § 50-20(b)(4)(a).

Plaintiff, however, cites *Hay v. Hay*, 148 N.C. App. 649, 559 S.E.2d 268 (2002), *superseded in part by statute as recognized in Warren v. Warren*, 175 N.C. App. 509, 623 S.E.2d 800 (2006), for the proposition that post-separation action taken to "preserve marital property" converts any subsequent appreciation into the separate property of the "preserving" spouse. In *Hay*, 148 N.C. App. at 653-54, 559 S.E.2d at 271-72, the husband, who had used his separate funds to preserve the marital home by making payments on the mortgage post-separation, contended that the decrease in the debt resulted in "appreciation in the value of the marital property" that should have been classified as divisible. In language relied upon by plaintiff here, this Court held in that case:

> [U]nder the plain language of N.C. Gen. Stat. § 50-20(b)(4)a, appreciation that results from the activities or actions of one spouse is not treated as divisible property. Therefore, *assuming defendant's mortgage payments resulted in an appreciation in the value of the marital home*, it was the result of his actions, and any resulting appreciation does not fall within the category of "divisible" property as defined by N.C. Gen. Stat. § 50-20(b)(4).

*Id.* at 655, 559 S.E.2d at 272 (emphasis added).

*Hay* cannot be read as holding that all efforts to preserve marital property necessarily mean that subsequent appreciation becomes the separate property of the spouse who acted to preserve the property. Notably, this Court did not hold that the preservation efforts resulted in separate property—it simply held that if there was any appreciation in value, within the meaning of the divisible property statute, it

was the result of the active efforts of payment. In short, *Hay* confirms that the appreciation must be the result of the spouse's actions.

Here, however, plaintiff's actions preserved the marital estate's down payment and right to purchase by closing on the property. That action resulted in the marital estate having a house worth $480,000.00. The subsequent $181,000.00 appreciation in the value of the house was not the result of any action by plaintiff—he took no action to enhance the value of the house following the closing. Although plaintiff's preservation efforts provided the *opportunity* for the market forces to increase the value of the house, that appreciation was not the result of his efforts. Instead, as he stipulated at trial, the appreciation was the result of market forces. Phrased differently, plaintiff did not generate any new value with his preservation actions: before the closing, the marital estate had funds in the amount of $89,000.00, and after closing, the marital estate had equity in the amount of $89,000.00. The trial court, therefore, correctly determined that the home's appreciation is entirely divisible property, rather than plaintiff's separate property.

II

[3] Plaintiff's final argument on appeal is that the trial court erred by ordering an equal distribution of the parties' marital and divisible property. N.C. Gen. Stat. § 50-20(c) provides: "There shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable." Under N.C. Gen. Stat. § 50-20(c), "an equal division is made mandatory 'unless the court determines that an equal division is not equitable.'" *White*, 312 N.C. at 776, 324 S.E.2d at 832 (emphasis omitted) (quoting N.C. Gen. Stat. § 50-20(c)). The burden is on the party seeking an unequal division of the marital property to prove by a preponderance of the evidence that an equal division would not be equitable. *Hendricks v. Hendricks*, 96 N.C. App. 462, 464, 386 S.E.2d 84, 85 (1989), *cert. denied*, 326 N.C. 264, 389 S.E.2d 113 (1990).

N.C. Gen. Stat. § 50-20(c) enumerates several factors the trial court is required to consider in deciding what distribution of the property would be equitable. *Edwards v. Edwards*, 152 N.C. App. 185, 187, 566 S.E.2d 847, 849, *cert. denied*, 356 N.C. 611, 574 S.E.2d 679 (2002). The trial court has broad discretion in evaluating and applying the N.C. Gen. Stat. § 50-20 factors. *Munn v. Munn*, 112 N.C. App. 151, 157, 435 S.E.2d 74, 78 (1993). Thus, "[o]nly when the evidence fails to show *any* rational basis for the distribution ordered by the court will

its determination be upset on appeal." *Nix v. Nix*, 80 N.C. App. 110, 112, 341 S.E.2d 116, 118 (1986). Significantly, in this case, plaintiff does not challenge any of the trial court's findings as unsupported by competent evidence.

Instead, plaintiff first argues, based on his belief that the post-separation appreciation in the Ballincourt house should have been classified as his separate property, that the trial court failed to consider "the portion of the increase that is attributable to the Plaintiff-Appellant's active efforts" as a distributional factor. N.C. Gen. Stat. § 50-20(c)(12) permits the trial court to consider any "factor which the court finds to be just and proper." The trial court properly considered this issue, but disagreed with plaintiff, finding that "the $181,000 post-separation increase in the value of the Ballincourt House was totally passive and was not the result of either Party's actions." As discussed above, the trial court did not err in making this determination.

The trial court did not, however, ignore plaintiff's preservation efforts. N.C. Gen. Stat. § 50-20(c)(11a) enables the court to consider "[a]cts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution." Here, the trial court found

> With respect to factor (c)(11a), after the date of separation and before the date of distribution, . . . Plaintiff did preserve the marital estate by seeking and obtaining an interim distribution of the Ballincourt Contract and by closing on the Ballincourt House. The Court further finds that to the extent that Plaintiff has not withdrawn the marital estate's equity in the Ballincourt House, he has preserved the marital estate. The Court further finds that to the extent that Plaintiff has made mortgage payments on the Ballincourt House (thought [sic] Plaintiff presented no such evidence that he did make such payments), or otherwise prevented the foreclosure of the Ballincourt House, Plaintiff has preserved the marital estate.

Thus, as evidenced by its finding of fact, the trial court considered and weighed plaintiff's preservation actions in determining whether an equal distribution was equitable.

[4] Next, plaintiff argues that the trial court failed to give "adequate consideration" to "ample testimony" regarding defendant's post-

separation illicit drug use. Plaintiff does not claim that the trial court gave no consideration or weight to defendant's illicit drug use, but rather that it gave too little weight to the evidence. It is well-established, however, that "[w]hen the trial court is the trier of fact, the court is empowered to assign weight to the evidence presented at the trial as it deems appropriate." *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397 (1996).

Plaintiff argues that the trial court should have given more weight to defendant's drug use because it is "the reason for [defendant]'s decrease in income, decrease in net worth and change in mental and physical health between the parties' date of separation through the date of the equitable distribution trial." Relying on *McKyer v. McKyer*, 179 N.C. App. 132, 632 S.E.2d 828 (2006), *disc. review denied*, 361 N.C. 356, 646 S.E.2d 115 (2007), plaintiff contends that the trial court had the discretion under N.C. Gen. Stat. § 50-20(c)(1), which permits the court to take into account "[t]he income, property, and liabilities of each party at the time the division of property is to become effective," to impute to defendant a level of income commensurate with her earning capacity rather than her actual income.

*McKyer*, 179 N.C. App. at 146, 632 S.E.2d at 836 (discussing trial court's findings of fact relating to its decision to impute income for purposes of calculation of child support), was a child support case and is immaterial to the question of equitable distribution. Plaintiff cites no pertinent authority that would permit a trial court to impute income when making findings under N.C. Gen. Stat. § 50-20(c)(1). We need not decide whether a trial court may do so because, in any event, we cannot conclude, in this case, that the trial court abused its discretion in not specifically imputing income, given its extensive findings regarding defendant's drug use and earnings.

[5] Plaintiff also contends that the trial court improperly considered under N.C. Gen. Stat. § 50-20(c)(1) the attorneys' fees owed by defendant. Plaintiff asserts that the court's consideration of defendant's unpaid attorneys' fees as part of her overall debt "essen[tially] reimbursed" defendant her attorneys' fees. The trial court found that, "based upon Defendant's testimony and as set forth on Schedule K to the Amended Pre-Trial Order, . . . Defendant has assets of $53,000, but liabilities of $138,000 for a negative worth of -$85,000.00." The court's finding is based on defendant's testimony that she had "various charges," including attorneys' fees owed to the law firm representing her, totaling approximately $137,110.00.

BRACKNEY v. BRACKNEY

[199 N.C. App. 375 (2009)]

Factor (c)(1) specifically identifies the liabilities of the parties as a consideration in determining whether an equal distribution is equitable. As the evidence presented at the equitable distribution hearing reveals, a major liability for defendant is her attorneys' fees. Plaintiff has not challenged the trial court's finding that defendant had liabilities of $138,000.00, including her attorneys' fees. Nor does plaintiff point to any evidence that the attorneys' fees were not really owed or could not result in a judgment against defendant. Plaintiff has failed to cite any authority suggesting that a liability based on attorneys' fees should be treated differently from other liabilities for the purposes of N.C. Gen. Stat. § 50-20(c)(1).

The court's judgment and order did not award defendant her attorneys' fees—there was no transfer of funds from plaintiff to defendant based on the fees. Defendant's net worth, which necessarily includes all her liabilities, was simply one factor among many informing the trial court's decision to deny both parties' claims for an unequal distribution and to instead order an equal distribution in accordance with N.C. Gen. Stat. § 50-20(c)'s presumption.

Plaintiff makes no other arguments in support of his claim that the trial court abused its discretion in ordering an equal distribution. The trial court, in this case, made detailed findings of fact on each factor set out in N.C. Gen. Stat. § 50-20(c) on which the parties presented evidence. It explained, in its order, why it found some evidence persuasive and other evidence unpersuasive. It then explained in detail how it weighed the factors. We could not ask for a more carefully drawn order. Although plaintiff may disagree with the trial court's credibility and weight determinations, those determinations are solely within the province of the trial court. We, therefore, affirm the trial court's equitable distribution judgment and order.

Affirmed.

Chief Judge MARTIN and Judge BEASLEY concur.