CARROLL BOSTON CORRELL v. MAURILLA CHRISTINE ALLEN

No. 8811DC973

(Filed 5 July 1989)

1. **Divorce and Alimony § 25.9— child custody changed from mother to father—deterioration of child's emotional health— sufficiency of evidence of changed circumstances**

The trial court did not err in ordering a change in child custody from defendant to plaintiff where the evidence tended to show that the child's emotional health deteriorated between the ages of three and five; defendant had the greater parental influence upon the child during this time; and the psychological problems suffered by the child were attributable to defendant and were in part due to her refusals to comply with visitation orders.

2. **Divorce and Alimony § 25.12— child custody—visitation privileges—limitation proper**

The trial court did not err in imposing restrictions on defendant's visits with the parties' child where the trial court found that defendant's demonstrations of anger and hostility in the presence of the child and her frustration of the relationship between the child and plaintiff necessitated, for the child's best interest, the restrictions, and evidence in the record supported the finding.

3. **Divorce and Alimony § 24.1— child support—failure to determine child's needs—award improper**

The trial court erred in ordering defendant to pay $480 per month in child support without first making adequate findings as to the child's reasonable needs.

4. **Divorce and Alimony § 24.6— entitlement to back child support—sufficiency of evidence**

The trial court erred in failing to award defendant back child support on the basis that she had offered no evidence which would indicate that she was entitled to it, since plaintiff testified that he was not in arrears but also testified that he reduced his child support payments in 1985 because he experienced a decrease in salary, and plaintiff testified that she was owed back child support.

CORRELL v. ALLEN

[94 N.C. App. 464 (1989)]

APPEAL by defendant from *William A. Christian, Jr., Judge.* Order entered 7 March 1988 in District Court, JOHNSTON County. Heard in the Court of Appeals 23 March 1989.

*Mast, Morris, Schulz & Mast, by George B. Mast and Bradley N. Schulz, for plaintiff-appellee.*

*Howard, From, Stallings & Hutson, P.A., by Robert E. Howard and Catherine C. McLamb, for defendant-appellant.*

BECTON, Judge.

In this domestic action, plaintiff, Carroll Boston Correll, and defendant, Maurilla Christine Allen, filed motions on matters related to the custody, visitation, and support of Carroll Boston Correll, Jr., the parties' son. Following a hearing, the trial judge entered an Order which, among other things, changed custody of the child from the defendant to the plaintiff, granted defendant visitation subject to certain conditions, directed that defendant pay $480 per month in child support, and denied defendant's motion for payment to her of back child support. Defendant appealed. We affirm in part, vacate and remand in part.

I

The factual and procedural history of this case is lengthy. Some 40 pages of the record on appeal consist of court orders alone. However, as the history of this case is necessary to our discussion of the issues defendant has raised, we recite it fully.

A

Carroll Boston Correll, Jr. ("the child") was born to Carroll Boston Correll and Maurilla Christine Allen on 20 July 1982 in the State of Georgia. Three months later, Mr. Correll and Ms. Allen separated, and they divorced in 1983. Pursuant to a settlement agreement they entered into that year, Ms. Allen received custody of the child.

Mr. Correll exercised his visitation rights until March of 1984. On Palm Sunday, 1984, Mr. Correll abducted the child and remained missing with him for three-and-a-half weeks. Canadian law enforcement officials apprehended Mr. Correll after he and his son boarded a flight bound for Zurich, Switzerland. When she recovered the child, Ms. Allen moved with him to her home in North Carolina. Also, in 1984, Mr. Correll, who received a two-year suspended

CORRELL v. ALLEN

[94 N.C. App. 464 (1989)]

sentence for abducting the child, secured a teaching position in North Carolina and moved to this State to live.

Orders entered on 7 August 1985 and 7 April 1986 continued custody of the child in Ms. Allen. Mr. Correll was granted restricted visitation, the court ordering all visits to take place in the presence of a psychologist. An alleged incident at one of the sessions resulted in the issuance of a Protective Order for the benefit of the psychologist. On 19 August 1986, Ms. Allen was held in contempt of court for failing to abide by instructions that she not attend the meetings between Mr. Correll and the child.

On the same day Ms. Allen was held in contempt, the court, finding that "the . . . previous visitation privileges set up by . . . this Court have gone well and proceeded smoothly," ordered that the conditions of Mr. Correll's visitations with his son be relaxed. Among other things, the court granted Mr. Correll weekend custodial visitations, Ms. Allen being ordered to deliver the child to a hotel in Greensboro on the first and third Fridays of each month, and Mr. Correll being ordered to return the child there on the following Sundays. On 1 April 1987, the court denied Ms. Allen's motion to "modify the method of transporting the minor child. to and from Greensboro."

Ms. Allen was found in contempt of court a second time on 10 June 1987 for "fail[ing] and refus[ing] to comply with the terms of the [visitation order] on at least two . . . occasions." In the same order, the court, finding that "the minor child has to travel some 800 to 900 miles every other weekend," modified the visitation schedule, giving Mr. Correll custody of the child one weekend each month and expanding Mr. Correll's summer and holiday visitations with his son. The court also ordered both parties "not to make any statement to the minor child about the other party which could be . . . considered derogatory."

B

On 18 August 1987, Mr. Correll filed a motion asking that the court award him custody of the child and require Ms. Allen to pay child support. On 25 November, Ms. Allen filed a motion to compel Mr. Correll to pay back child support and medical expenses of the child, to terminate Mr. Correll's visitation privileges, and to increase the amount of child support. The judge held a hearing on the respective motions and entered his Order on 7

CORRELL v. ALLEN

[94 N.C. App. 464 (1989)]

March 1988. Mr. Correll and Ms. Allen each testified, as did Dr. Linda Norris, a Raleigh psychologist who had evaluated the child.

The judge made 24 findings of fact covering some nine pages in the Order. Among his findings, which we renumber and paraphrase were these:

1) That Dr. Norris testified the child was experiencing emotional problems; that these problems were not the result of the child's visits with his father; that the child was anxious and found the world to be a "scary place"; that he had low self-esteem and had feelings of self-loathing; that he felt helpless and vulnerable and felt that his life was "out of control"; that it was unlikely that the child distinguished between the real and the unreal; that he did not handle change well; and that the conflict between his parents put him at risk of developing serious adjustment problems later in life, including depression and withdrawal from others.

2) That, according to Dr. Norris, the child's personality deficiencies needed to be addressed immediately "to avoid serious and lasting problems . . .";

3) That immediate action was necessary to prevent irreparable damage and injury to the child's emotional and physical development;

4) That the child had been with Ms. Allen during the majority of his developmental years, with the exception of limited visitations with his father;

5) That Ms. Allen had failed to provide for the child in the area of self-esteem, and that his ability to deal with reality was lacking;

6) That Mr. Correll, by reason of his limited access to the child, had not contributed to the child's emotional problems;

7) That Ms. Allen had continually frustrated the efforts of Mr. Correll to visit with the child and that she had exhibited anger and hostility toward Mr. Correll in the child's presence, all of which appeared to have interfered with the emotional development of the child, to his emotional detriment.

The judge concluded that there had been "a material and substantial change of circumstances which require[d] th[e] Court

CORRELL v. ALLEN

[94 N.C. App. 464 (1989)]

to terminate the existing Orders relating to custody, visitations and support, by reason of the emotional condition of the minor child, and other matters set forth in the Findings of Fact in th[e] cause. . . ." The judge ordered that the custodial parent be changed from Ms. Allen to Mr. Correll, that Ms. Allen have restricted visitations, that she pay $480 per month in child support, and that she recover nothing from Mr. Correll by way of back child support. The judge likewise found Ms. Allen in contempt of court and ordered her to serve five days in jail.

## II

[1] Ms. Allen first assigns error to the judge's order that custody be changed from herself to Mr. Correll. She contends that the judge's findings of fact are unsupported by the evidence in the record and that there is no showing that any of the changed circumstances had adversely affected the child's welfare.

An order of a court for the custody of a minor child may be modified upon a showing of changed circumstances. N.C. Gen. Stat. Sec. 50-13.7(a)(1987). "Changed circumstances" means a "substantial change of circumstances affecting the welfare of the child . . . ." *Blackley v. Blackley*, 285 N.C. 358, 362, 204 S.E. 2d 678, 681 (1974) (citation omitted). Appellate review of the trial judge's determination in a custody matter concerns whether the judge's findings of fact are supported by competent evidence in the record. *E.g.*, *Pritchard v. Pritchard*, 45 N.C. App. 189, 196, 262 S.E. 2d 836, 840 (1980). Findings so supported are conclusive on appeal. *Id.* In addition, the trial judge enjoys "broad discretion" in child custody matters, the judge being the person with the opportunity to see and hear the parties and witnesses involved in the case. *See, e.g.*, *Blackley*, 258 N.C. at 362, 204 S.E. 2d at 681.

Ms. Allen takes issue with the reasons given by the judge for finding changed circumstances. She discusses each of these reasons in her brief. Because, in our view, the judge's findings about the child's emotional problems and about Ms. Allen's frustration of Mr. Correll's visitation privileges are sufficiently supported by the record, and are an adequate basis to order a change of custody, we do not address Ms. Allen's arguments about the other findings made by the judge.

That the child's emotional health had deteriorated between the ages of three and five clearly appears in the record. In the

CORRELL v. ALLEN

[94 N.C. App. 464 (1989)]

7 August 1985 order, the court directed that Dr. Norris evaluate the child. In the 7 April 1986 order, the judge, using reports and depositions of Dr. Norris and her associates, found as fact that "[the] psychological testing revealed . . . that the child of the parties is emotionally healthy and is developing along normal lines for most three . . . year olds." Dr. Norris evaluated the child a second time, at Ms. Allen's request, after the court increased Mr. Correll's summer visitation with the child in 1987. Dr. Norris testified at the 1988 custody hearing that the child 1) had difficulty distinguishing the real from the unreal; 2) felt vulnerable, insecure and helpless; 3) seemed to have low self-esteem and seemed to be unhappy and fragile; and 4) had problems with interpersonal relationships. Dr. Norris said that the child could not overcome his problems as long as tension persisted between his parents. She further stated that the child's condition was not the result of Mr. Correll's visitations but could have been caused by "Maurilla Allen's hostility." The child's insecurity, Dr. Norris said, possibly stemmed from the abduction when he was 18-months old.

The findings made by the judge about the child's psychological state are based upon Dr. Norris' testimony, and that testimony plainly reveals a substantial change of circumstances negatively affecting the child's welfare. The disappearance of the child's emotional equilibrium occurred during a period when the predominate parental influence upon him was Ms. Allen. Dr. Norris opined that a possible cause of the child's problems was his mother's hostility.

Evidence in the record suggests that this hostility was centered around the child's visitations with Mr. Correll, visitations which were often interfered with by Ms. Allen. Ms. Allen testified that she believed the summer visitation schedule ordered by the court on 10 June 1987 was "too long for a four-year-old child." She contended that the child would cry and beg not to go on the visits with Mr. Correll, and that on some of these occasions Ms. Allen would take the child back home with her. On one occasion, Ms. Allen made a tape recording of her son in a crying fit. The judge concluded from the tape that Ms. Allen was "egging" the child on, doing nothing to prepare him psychologically to visit with Mr. Correll. We have listened to the same tape and cannot say that the judge's conclusion is unfounded.

In *Woncik v. Woncik*, we held that interference with the non-custodial parent's visitation could constitute a substantial change

CORRELL v. ALLEN

[94 N.C. App. 464 (1989)]

of circumstances sufficient to warrant a change of custody if that interference had a negative impact on the child's welfare. 82 N.C. App. 244, 249, 346 S.E. 2d 277, 280 (1986). In this case, evidence in the record suggests Ms. Allen's frustration of Mr. Correll's visitation privileges contributed to the child's emotional problems. The evidence about the child's psychological state, in part resulting from the visitation problems, support the judge's finding of a substantial change of circumstances and support the change of custody ordered by the judge.

Ms. Allen maintains, however, that the judge's decision cannot stand as it is contrary to the recommendations of Dr. Norris, whose testimony the judge used as the basis for many of his findings of fact. Dr. Norris believed that custody should continue with Ms. Allen and that a more regular visitation schedule, with no overnight visits, should be instituted.

Expert testimony does not bind a trier of fact. "Even though unimpeached and uncontradicted," expert testimony is not conclusive upon the trier "since the trier may apply his own experience or knowledge in determining how far to follow the expressed opinion." *Security-First Nat'l Bank of Los Angeles v. Lutz*, 322 F. 2d 348, 355 (9th Cir. 1963); *cf. State v. Allen*, 322 N.C. 176, 185, 367 S.E. 2d 626, 631 (1988) (merely because one psychologist testified at hearing did not mean judge obligated to find his opinion dispositive, particularly when some of underlying data he consulted and partially agreed with had reached contrary conclusion). In this case, Dr. Norris testified that the child had severe emotional problems requiring "substantial immediate change." Her opinion was that the visitation schedule be limited, that one parent (Ms. Allen) exercise more control. The judge agreed with Dr. Norris that the child's problems needed immediate remedy; he believed, however, that Mr. Correll should be the parent to exercise more control. This judge was the person with the opportunity to hear the witnesses and to evaluate all of the evidence in the record. We cannot say that it was an abuse of his discretion to order a change of custody.

In summary, the record supports the findings of the judge that the psychological problems suffered by the child were attributable to Ms. Allen and were in part due to her refusals to comply with the visitation orders. Given that a substantial change affecting the welfare of the child had occurred, it was not an abuse of discretion for the judge to order a change of custody. This assignment of error is overruled.

III

[2]   Ms. Allen next argues that the judge erred by imposing excessive restrictions on her visitations with her son. The judge ordered that for a period of six months Ms. Allen would be permitted one monthly visitation with the child, each visit to be conducted under the supervision of the Caldwell County Department of Social Services. Ms. Allen contends that such restrictive conditions on her visitations are unwarranted.

As with a custody order, the trial judge must make appropriate findings that support the imposition of severe restrictions on a parent's right of visitation. N.C. Gen. Stat. Sec. 50-13.5(i) (1987); *Falls v. Falls*, 52 N.C. App. 203, 208-09, 278 S.E. 2d 546, 551, *disc. rev. denied*, 304 N.C. 390, 285 S.E. 2d 831 (1981). These findings must be supported by competent evidence in the record. *Id.* at 208, 278 S.E. 2d at 551. Visitations may be denied if visitation is not in the child's best interest. Sec. 50-13.5(i).

The judge found that Ms. Allen's "demonstrations of anger and hostility" in the presence of the child, and her "frustration of the relationship" between the child and Mr. Correll, necessitated, for the child's best interest, the restrictions he imposed on the visitation. The evidence in the record supports this finding.

As we specified above, Dr. Norris testified that Ms. Allen exhibited "hostility." Mr. Correll's testimony, moreover, alleged several instances of violent conduct on the part of Ms. Allen. For example, Mr. Correll charged that, on one occasion, Ms. Allen attempted to "ram" the car in which he and the child were riding. We hold that the evidence in the record supports the restrictions the judge placed on the initial visitations.

Ms. Allen has argued that both the change of custody and the restricted visitations ordered by the judge were done to punish her for contempt. We note this argument, and we find it to be without merit. Our review of the record reveals a substantial evidentiary basis to support the judge's findings of fact on the custody and visitation issues. The record does not reveal an abuse of discretion by the judge in taking the actions he did, and we reject Ms. Allen's contention that the judge's rulings were retaliatory.

This assignment of error is overruled.

CORRELL v. ALLEN

[94 N.C. App. 464 (1989)]

IV

[3]   Ms. Allen next argues that the judge erred by ordering her to pay $480 per month in child support. We agree that the judge erred and remand for further findings on this issue.

An order for child support must be based upon the trial judge's conclusions of law as to the amount of support necessary "to meet the reasonable needs of the child" and his conclusions as to the parties' abilities to provide that amount. N.C. Gen. Stat. Sec. 50-13.4(c) (1987); *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E. 2d 185, 189 (1980). "In order to determine the reasonable needs of the child, the trial court must hear evidence and make findings of *specific fact* on the child's actual past expenditures and present reasonable expenses." *Atwell v. Atwell*, 74 N.C. App. 231, 236, 328 S.E. 2d 47, 50 (1985) (emphasis added and citation omitted).

Initially, we note that Ms. Allen failed to obey a subpoena that she bring her financial records to the custody hearing. We will not countenance, therefore, her complaint on appeal that the judge's order is deficient concerning his findings as to the ability of Ms. Allen to provide financial support to the child. The judge's findings are inadequate, however, concerning the child's reasonable needs, and we cannot attribute this inadequacy to Ms. Allen's conduct.

Concerning the child's needs, the judge found that

. . . considering the emotional condition of the minor child and the needs of the minor child for medical and psychological treatment, as well as the child's need for food, clothing, utilities, transportation, housing, [etc.] . . . the Court finds ·that the parties have made past expenditures . . . in excess of $500.00 per month, and at the present time, the minor child has needs which the Court finds as reasonable of no less than $480 per month.

The figures of $500 and $480 are not supported by any evidence we find in the record on appeal. Even given the absence of Ms. Allen's financial records, the judge could have determined the child's reasonable needs through evidence offered by Mr. Correll. The figures the judge arrived at, however, are unsupported by Mr. Correll's testimony, and are not supported by any of the previous orders entered in this case. Consequently, we vacate and remand this portion of the order for further findings as to the child's reasonable needs.

V

[4]   Ms. Allen's last argument is that the judge erred by failing to award her back child support. On this point, as well, we agree with Ms. Allen, and we remand for further findings on this question.

Ms. Allen alleged that Mr. Correll owed her $2,915 in back child support. The judge, however, found as fact "[t]hat [Ms. Allen] offered *no evidence* that would indicate [she] is entitled to payment of back child support." (Emphasis added.) This finding is belied by the record.

First, although Mr. Correll contended he was not in arrears on his child-support payments, he testified that "in 1985, since I had suffered about a $30,000 decrease in salary, *I reduced the amounts* [of payments] to about $250 per month." (Emphasis added.) Second, Ms. Allen testified that she was owed back child support. There was, in short, evidence that Mr. Correll had not met his child-support obligations, and thus the judge's finding is not supported by the record. We vacate, therefore, this portion of the order and remand for further findings.

VI

In summary, that portion of the judge's order changing custody from Ms. Allen to Mr. Correll is affirmed. That portion ordering restricted visitation between Ms. Allen and the child is affirmed. Those portions of the order directing that Ms. Allen pay to Mr. Correll $480 per month in child support and denying Ms. Allen payment of back child support from Mr. Correll are vacated and remanded for additional findings.

Affirmed in part, vacated and remanded in part.

Judges JOHNSON and ORR concur.