BARRY HOYT BODIE, Plaintiff v. CLAIRE VOEGLER BODIE, Defendant

No. COA11-999

(Filed 5 June 2012)

1. Divorce—equitable distribution—divisible property— additional findings necessary

The trial court erred in an equitable distribution case by failing to make adequate findings of fact and conclusions of law regarding $216,000.00 in post-separation debt payments made by defendant. The trial court's equitable distribution order was reversed and remanded for additional findings of fact concerning the existence or distribution of any divisible property and an amended distributional decision.

2. Divorce—equitable distribution—divisible property—increase in value of marital home

The trial court did not err in an equitable distribution case by failing to classify, value, and distribute as divisible property the alleged increase in the net value of the parties' marital homes as proposed by plaintiff. The trial court was not required to accept and make findings of fact based upon the testimony of plaintiff's real estate expert and the trial court's order specified that the properties in question should be sold, with the proceeds to be divided equally between the parties. The case was remanded for

BODIE v. BODIE

[221 N.C. App. 29 (2012)]

the trial court to determine the source of funds used to make post-separation debt payments and plaintiff's credit for those payments.

**3. Divorce—equitable distribution—marital debt—insufficient findings**

The trial court's findings of fact in an equitable distribution case concerning the classification, value, and distribution of certain items of marital debt were insufficient for the Court of Appeals to determine whether the judgment reflected a correct application of the law. The case was remanded for further findings of fact regarding the challenged debts.

**4. Divorce—equitable distribution—distribution of property— no abuse of discretion**

Plaintiff's argument in an equitable distribution case that the trial court erred by "failing to distribute" certain properties and that certain conditions placed on the sale of these properties imposed "improper burdens" on plaintiff was meritless. Plaintiff failed to explain how the trial court's decision with respect to this issue rested upon an error of law and plaintiff failed to advance any argument tending to support a determination that the trial court abused its discretion in the course of deciding to allocate these responsibilities to plaintiff.

**5. Divorce—equitable distribution—vehicle—no abuse of discretion**

Plaintiff's argument in an equitable distribution case that the trial court erred in failing to value, classify, and distribute a G6 Pontiac vehicle lacked merit. Plaintiff failed to make any argument specifically addressing the down payment that he allegedly provided in connection with this vehicle, explain how he was in any way prejudiced by the manner in which the trial court addressed any issue relating to this vehicle, or assert that the trial court abused its discretion by failing to distribute the amount of the down payment to him.

**6. Divorce—equitable distribution—marital property—divisible property—classification and valuation—no error**

Plaintiff's argument in an equitable distribution case that based upon the reasons asserted elsewhere in his brief, the trial court failed to classify and value all of the marital and divisible property of the parties was without merit.

BODIE v. BODIE

[221 N.C. App. 29 (2012)]

**7. Divorce—alimony—dependent spouse—accustomed standard of living—no error**

The trial court in a divorce case did not erroneously fail to find that defendant was a "dependent spouse" for alimony-related purposes. Even if the trial court erred, defendant was still not entitled to an award of alimony given the complete absence of any indication that plaintiff was in a position to make alimony payments to defendant.

Appeal by plaintiff from order entered 3 August 2009 by Judge Mack Brittain in Transylvania County District Court and by defendant from order entered 25 February 2011 by Judge David K. Fox in Transylvania County District Court. Heard in the Court of Appeals 11 January 2012.

*Dameron Burgin Parker Jackson Wilde & Walker, P.A., by Phillip T. Jackson, for Plaintiff.*

*Donald H. Barton for Defendant.*

ERVIN, Judge.

Plaintiff Barry Hoyt Bodie appeals from an order distributing the parties' marital and divisible property and Defendant Claire Voegler Bodie appeals from an order denying her alimony claim. On appeal, Plaintiff argues that the trial court erred by failing to properly classify, value, and distribute certain items of property, while Defendant argues that the trial court erroneously rejected her alimony claim. After careful consideration of the parties' challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's equitable distribution order should be affirmed in part and reversed and remanded for additional findings in part and that the trial court's alimony order should be affirmed.

I.  Background

A.  Substantive Facts

The parties were married on 16 April 1996 and moved to Brevard, where Plaintiff began working as a physician at Western Carolina Urological Associates, in 1997. In 2008, Plaintiff transferred his practice to Transylvania Physician Services. The parties had one child in 1999. The parties separated 2 July 2005 and divorced on 15 September 2006.

BODIE v. BODIE

[221 N.C. App. 29 (2012)]

After moving to Brevard, the parties purchased a home located at 98 Soquilli Drive. In January 2004, the Soquilli property was refinanced, resulting in a total indebtedness associated with that home of $256,000.00. A second mortgage in the amount of $26,000.00 was taken out on the Soquilli property later in 2004. The Soquilli property had an appraised value of $255,000.00 as of the date of separation, with an outstanding balance of about $241,000.00 associated with the first deed of trust and an outstanding balance of $26,000.00 associated with the second deed of trust. On 5 January 2009, the Soquilli property was appraised at $275,000.00. As of 15 July 2009, the balance on the first deed of trust was approximately $233,100.00, while the obligation associated with the second deed of trust had been fully satisfied.

Prior to the date of separation, the parties purchased a second marital home located on Country Club Circle. The Country Club Circle property had an appraised value of $450,000.00 on the date of separation, subject to an outstanding indebtedness of $460,000.00. As of 5 January 2009, the Country Club Circle property had an appraised value of $475,000.00 and was subject to an outstanding secured indebtedness totaling approximately $435,400.00. Additional facts relating to the parties' assets and liabilities will be provided at appropriate places throughout the remainder of this opinion.

### B. Procedural History

On 3 August 2005, Plaintiff filed an action for child custody and equitable distribution. On 18 August 2005, Defendant filed an answer to Plaintiff's complaint and asserted various counterclaims. The parties' pleadings raised the following issues: child custody, child support, divorce from bed and board, post-separation support, alimony, and equitable distribution.

On 11 July 2006, the trial court entered an order requiring Plaintiff to pay the mortgage on the Country Club Circle property for the following year. On 18 December 2006, the trial court entered an order addressing the parties' custody and child support claims. On 9 November 2007, a consent order was entered providing that the two homes owned by the parties would be listed for sale and that the net proceeds resulting from the sale would be placed in the trust account of Plaintiff's attorney. On 12 February 2008, an order was entered giving Plaintiff possession of the Country Club Circle property.

On 3 August 2009, the trial court entered an equitable distribution order, from which Plaintiff attempted to appeal to this Court. On 7

December 2010, we dismissed Plaintiff's appeal as having been taken from an unappealable interlocutory order. *Bodie v. Bodie*, ____ N.C. App ____, 702 S.E.2d 556 (2010) (unpublished). On 25 February 2011, the trial court entered an order denying Defendant's alimony claim. After all proceedings at the trial court level had been concluded, Plaintiff noted a second appeal to this Court from the equitable distribution order and Defendant noted an appeal to this Court from the alimony order.

## II.  Equitable Distribution Order

### A.  Post-separation Marital Debt Payments

[1]  In its order, the trial court found as a fact that:

> 10.  The Court finds that Husband has paid $216,000.00 towards the mortgage, insurance, upkeep and taxes for the marital residences after the DOS and that these payments were for marital debt.

In his brief, Plaintiff argues that the "trial court made no determination about the existence or distribution of any divisible property, even though the trial court's findings of fact acknowledged the existence of at least $216,000.00 in divisible property." Having made the finding of fact recited above, Plaintiff contends that the trial court should have classified the debt payments as divisible property and included the value of these payments in its subsequent distribution decision. We agree.

N.C. Gen. Stat. § 50-20(a) provides that, in an equitable distribution proceeding, "the court shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties in accordance with the provisions of this section." As a result:

> The first step of the equitable distribution process requires the trial court to classify all of the marital and divisible property— collectively termed distributable property—in order that a reviewing court may reasonably determine whether the distribution ordered is equitable. In fact, "to enter a proper equitable distribution judgment, the trial court must specifically and particularly classify and value all assets and debts maintained by the parties at the date of separation."

*Robinson v. Robinson*, ____ N.C. App ____, ____, 707 S.E.2d 785, 789 (2011) (citing *Cunningham v. Cunningham*, 171 N.C. App. 550, 555-

56, 615 S.E.2d 675, 680 (2005), and quoting *Dalgewicz v. Dalgewicz*, 167 N.C. App. 412, 423, 606 S.E.2d 164, 171 (2004)). "It is not enough that evidence can be found within the record which could support such classification; the court must actually classify all of the property and make a finding as to the value of all marital [and divisible] property." *Robinson*, ____ N.C. App at ____ 707 S.E.2d at 790 (citing *Warren v. Warren*, 175 N.C. App. 509, 514-15, 623 S.E.2d 800, 804 (2006)).

According to N.C. Gen. Stat. § 50-20(b)(4)d, divisible property includes "[i]ncreases and decreases in marital debt and financing charges and interest related to marital debt." For that reason, a trial judge deciding an equitable distribution case must make findings classifying and distributing increases and decreases in marital debt. In this case, after finding that Plaintiff "paid $216,000.00 towards the mortgage, insurance, upkeep and taxes for the marital residences after the DOS and that these payments were for marital debt," the trial court failed to classify these payments as divisible property or make specific findings distributing this divisible property. We believe that the trial court's failure to make such findings and a related distribution decision constituted an error of law.

"A spouse is entitled to some consideration, in an equitable distribution proceeding, for any post-separation payments made by that spouse (from non-marital or separate funds) for the benefit of the marital estate. Likewise, a spouse is entitled to some consideration for any post-separation use of marital property by the other spouse." *Walter v. Walter*, 149 N.C. App. 723, 731, 561 S.E.2d 571, 576-77 (2002) (citing *Edwards v. Edwards*, 110 N.C. App. 1, 11, 428 S.E.2d 834, 838, *disc. review denied*, 335 N.C. 172, 436 S.E.2d 374 (1993), and *Becker v. Becker*, 88 N.C. App. 606, 607-08, 364 S.E.2d 175, 176-77 (1988)). For that reason, the trial court may, after classifying post-separation debt payments as divisible property, distribute the payments unequally. *Stovall v. Stovall*, ____ N.C. App ____, ____, 698 S.E.2d 680, 686 (2010) (stating that "the trial court properly classified defendant's post-separation payments as divisible property," that the trial court concluded that " 'defendant is entitled to a credit of $ 160,000 for the payments of the marital debt,' " and that, although "the trial court labeled the $160,000.00 as a 'credit[,]' in actuality, it treated the $160,000.00 as divisible property and concluded that an equal distribution was not equitable"). Plaintiff has not cited any cases, and we know of none, holding that a spouse is entitled to a "credit" for post-separation payments made using marital funds. As a result, in order

to properly evaluate the trial court's treatment of post-separation marital debt payments, the source of the funds used to make the payments should be identified.

The equitable distribution order at issue here does not include a finding that the post-separation payments in question constituted divisible property or any findings regarding the extent, if any, to which Plaintiff paid these marital debts using separate property. Although the trial court found that Plaintiff paid $216,000.00 towards the mortgage, insurance, upkeep and taxes on the marital residences after the date of separation; that a 401(k) retirement account associated with Plaintiff's employment at Western Carolina Urology had a date of separation "marital component" of approximately $225,600.00; that, after the date of separation, the value of Plaintiff's 401(k) account experienced passive fluctuations stemming from market pressures; and that Plaintiff spent approximately $335,000.00 from the 401(k) account after the date of separation, including $125,000.00 used to reduce marital debts and about $167,888.00 used to cover personal, non-marital expenses, the trial court never addressed the extent to which specific post-separation debts were paid using Plaintiff's separate property or the manner in which any payments made using Plaintiff's separate property should be recognized in the equitable distribution process.

According to N.C. Gen. Stat. § 50-20(b)(4)(a), "[a]ll appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution" shall be classified as divisible property, with the exception that "appreciation or diminution in value which is the result of post-separation actions or activities of a spouse shall not be treated as divisible property."

> [U]nder the statute, there is a distinction between active and passive appreciation when classifying divisible property. . . . "The General Assembly has given divisible property status only to passive increases in value of marital and divisible property." "[P]assive appreciation" refers to enhancement of the value of property due solely to inflation, changing economic conditions, or market forces, or other such circumstances beyond the control of either spouse. . . . "Active appreciation," on the other hand, refers to "financial or managerial contributions" of one of the spouses.

*Brackney v. Brackney*, 199 N.C. App. 375, 385-86, 682 S.E.2d 401, 408 (2009) (quoting S. Reynolds, 3 *Lee's North Carolina Family Law*

§ 12.52(b)(i) (5th ed. 2002), and quoting *O'Brien v. O'Brien*, 131 N.C. App. 411, 420, 508 S.E.2d 300, 306 (1998), *disc. review denied*, 350 N.C. 98, 528 S.E.2d 365 (1999)), *petition for disc. review withdrawn*, 363 N.C. 853, 694 S.E.2d 200 (2010). The trial court's finding that the post-separation fluctuation in the value of Plaintiff's 401(k) account was passive suggests that Plaintiff made no post-separation contributions to that account, although the trial court did not make an express finding to that effect. In light of Plaintiff's admission that he spent approximately $335,000.00 from the 401(k) account after the date of separation, one could infer from other information in the record that the value of his 401(k) account increased by at least $110,000.00 after the date of separation. Assuming that the full amount of this increase was passive, one could conclude that the entire $335,000.00 expenditure was divisible property, a determination which would, presumptively, suggest that $167,500.00 should be distributed to each spouse. The trial court's finding that Plaintiff spent $167,888.00 from the 401(k) account for the purpose of covering personal expenses suggests that the trial court might have believed that Plaintiff spent "his half" on personal expenses. The trial court did not, however, make findings of fact addressing these or other relevant issues, so we are unable to determine whether the trial court's treatment of the payments made from Plaintiff's 401(k) account rested on a proper understanding of the applicable law.

In addition, the trial court's findings fail to address the source from which Plaintiff obtained the funds used to make the post-separation marital debt payments. Defendant asserts that Plaintiff made the relevant marital debt payments from funds contained in his 401(k) account, a position which Plaintiff's testimony to the effect that he used monies from the 401(k) account to make a significant portion of the debt payments tends to support. If Plaintiff spent $167,000.00 derived from the 401(k) account to cover personal expenses and $216,000.00 derived from the 401(k) account to reduce marital debt, then the 401(k) account would necessarily have increased in value to at least $383,000.00. However, Plaintiff only admitted spending $335,000.00, which leaves $48,000.00 in post-separation debt payments unexplained. Simply put, without additional findings, the numbers in the equitable distribution order "don't add up." As a result, we conclude that this case should be remanded to the trial court for the purpose of making additional findings of fact which (1) classify, value, and distribute the passive increase in the value of Plaintiff's 401(k) account after the date of separation; (2) identify the extent, if any, to which Plaintiff paid marital debt using his separate

funds; (3) resolve the existing mathematical discrepancies in the equitable distribution order; and (4) properly distribute all divisible property.

In urging us to conclude that the trial court properly addressed the issues surrounding the $216,000.00 in post-separation debt payments that Plaintiff made, Defendant contends that Plaintiff's payments were made, at least in part, pursuant to a court order. However, Defendant does not explain how this fact has any bearing on the manner in which these post-separation payments should be classified or distributed. In addition, Defendant asserts that Plaintiff received rental income from the marital residences; that Defendant obtained tax benefits from having reduced the indebtedness against the real property; and that Plaintiff "used marital funds from his 401(k) [account] to pay" the marital debts. We are unable to determine, however, what impact the other factors cited by Defendant have on the extent to which the post-separation debt payments that Plaintiff made should be treated as divisible property and the manner in which those payments should be distributed between the parties given the deficiencies in the trial court's findings noted above. As a result, we conclude that the trial court's equitable distribution order should be reversed and that this case should be remanded to the trial court for the making of additional findings of fact and an amended distributional decision.

## B. Increase in Value of Marital Homes

[2] Secondly, Plaintiff contends that the trial court erred by "failing to classify, value, and distribute the increase in the net value of the marital homes as divisible property." In seeking to persuade us of the validity of this argument, Plaintiff discusses two possible causes of a change in the value of the marital residences, each of which will be considered separately.

In his brief, Plaintiff notes that the trial court found that the value of the two properties "fluctuated" after the date of separation as a result of market pressures and that any resultant change in value was passive. Plaintiff asserts that, by making this finding, the trial court "acknowledges that there exists divisible property related to the increase in fair market value" of the two properties. In addition, Plaintiff claims that the "undisputed evidence" of Jack Cook, a real estate appraiser who testified on Plaintiff's behalf, established that the value of the Country Club Circle property increased by $25,000.00 and that the value of the Soquilli property increased by $20,000.00 between the date of separation and the date of divorce. As a result,

Plaintiff claims that the trial court committed prejudicial error by failing to classify the change in value set out in Mr. Cook's testimony as divisible property and to distribute that property in an equitable manner. We do not find this argument persuasive.

The essential problem with this aspect of Plaintiff's argument is that the trial court was not required to accept and make findings of fact based upon the testimony to which Plaintiff refers. "Uncontradicted expert testimony is not binding on the trier of fact. Questions of credibility and the weight to be accorded the evidence remain in the province of the finder of facts." *Scott v. Scott,* 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994) (citing *Correll v. Allen,* 94 N.C. App. 464, 470, 380 S.E.2d 580, 584 (1989)). As a result, the trial court did not err by failing to make findings and conclusions based upon the proposed values advocated by Plaintiff's expert. Moreover, the trial court's order specifies that the properties in question should be sold, with the proceeds to be divided equally between the parties. In light of that fact, we are unable to determine how Plaintiff has been prejudiced by the trial court's failure to specifically assign a value to the passive change in value of the properties based on the testimony of Mr. Cook.

As a more general matter, we perceive a potential inconsistency between the manner in which Plaintiff contends that the marital debt payments discussed above and the change in the value of the marital residences should be treated. In essence, Plaintiff may be arguing that the trial court should have classified, valued, and distributed the change in the value of the marital residences stemming from the reduction in the amount of marital debt associated with Plaintiff's post-separation debt payments. If Plaintiff is, in fact, making such an argument, he appears to be seeking credit for both the amount by which the mortgage was reduced and a credit for the payments themselves. In support of his proposed approach to resolving these issues, Plaintiff cites *Warren,* 175 N.C. App. at 514-15, 623 S.E.2d at 804, in which post-separation debt payments were made from a spouse's separate funds instead of marital property. As we have already indicated, the equitable distribution order must be remanded for additional findings addressing whether Plaintiff's post-separation debt payments were made from separate or marital funds. If Plaintiff used his separate funds to make these payments, the equitable distribution order entered on remand should account for that fact in an appropriate manner. Given the procedural context that presently exists in this case, it would be premature for us to speculate concerning the manner in which the trial court should assess the post-separation debt

payments and any related change in the value of the relevant real property given that the extent, if any, to which the post-separation payments were made using Plaintiff's separate property remains to be determined. For that reason, we simply conclude that the trial court should address and resolve this issue on remand once the source of the funds used to make the post-separation debt payments has been established.

## C. Classification of Certain Marital Debts

[3] Next, Plaintiff argues that the trial court erred by "failing to classify, value and distribute certain items of marital debt." More specifically, Plaintiff contends that the trial court erred by (1) failing to classify and distribute as marital debt the personal guarantee that he made in connection with a loan incurred by Western Carolina Urology; (2) failing to find that a 2004 loan made from Plaintiff's 401(k) account was a marital debt; (3) failing to find that the obligation to repay a loan that Plaintiff received from Western Carolina Urology was a marital debt; (4) failing to make appropriate findings of fact concerning the second mortgage on the Soquilli property; (5) failing to find that "some portion" of the parties' 2005 tax obligation was a marital debt; and (6) failing to find that a loan that Plaintiff made from his 401(k) account in 2007 was utilized to pay the arrearage on an obligation which encumbered the parties' marital residences.

According to well-established North Carolina law, "the trial court is required to classify, value and distribute, if marital, the debts of the parties to the marriage." *Miller v. Miller*, 97 N.C. App. 77, 79, 387 S.E.2d 181, 183 (1990). "The trial court's findings of fact regarding marital debts must be specific enough to allow an appellate court to determine whether the judgment reflects a correct application of the law." *Pott v. Pott*, 126 N.C. 285, 288, 484 S.E.2d 822, 825 (1988) (citing *Armstrong v. Armstrong*, 322 N.C. 396, 405, 368 S.E.2d 595, 599-600 (1988). After carefully examining the record, we have been unable to identify any findings addressing the amount of the debts in question, the source from which those debts were paid, or the extent to which those debts should be treated as marital debt. Instead of attempting to defend the trial court's treatment of these debts, Defendant makes what appears to be an equitable argument that relies upon various aspects of the record that are not reflected in the trial court's findings of fact. In light of that fact, the fact that these debts may be interrelated with the issues that we have addressed above, and the fact that the findings that the trial court may ultimately make with respect to these debt-related issues may affect the ultimate size of the marital

estate and the manner in which it should be distributed between the parties, we are unable to conclude that the trial court's error was harmless. As a result, we conclude that the trial court should, on remand, make appropriate findings addressing the debts listed above, including determining the amount of those debts, whether those debts should be treated as marital or separate debts, the source from which those debts have been paid, and the effect that these additional findings should have on the ultimate distributional decision.

### D. Country Club and Soquilli Properties

[4] Next, Plaintiff contends that the trial court erred by "failing to distribute" the Country Club property and the Soquilli property and that certain conditions placed on the sale of these properties imposed "improper burdens" on Plaintiff. Plaintiff's arguments lack merit.

In the equitable distribution order, the trial court found, in pertinent part, that:

3. . . . The parties stipulated certain real property owned by the parties on the Date of Separation . . . to be marital property. This real property includes the residence known as 25 Country Club Circle[, and] . . . real property known as 98 Soquilli Drive, Brevard, NC and the parties stipulated this to be marital property. . . . Both parcels of real property have been listed for sale pursuant to previous agreements between the parties and orders of the Court. . . .

. . . .

17. The Court has considered an exclusive in-kind distribution of the marital estate but finds as a fact that such an exclusive distribution is not practical given the nature of the assets and debts which are the marital estate. Such a distribution is in fact not possible given the agreement of the parties regarding the interim distributions of marital property.

18. . . . [T]he Court finds as fact that an unequal division of the marital estate would be equitable and that the assets and debts should be distributed as follows: . . . [T]he marital real property being sold as agreed between the parties. . . . Further, the Court finds it to be equitable that Husband continues to pay the mortgage, insurance, taxes and maintenance expenses on the real properties until the same are sold. . . .

Based on these and other findings, the trial court concluded that "[t]he presumption that an in-kind division is equitable has been rebutted by the greater weight of the evidence" and ordered that:

> The Country Club Circle and Soquilli properties shall be sold at a price agreed to by the parties. . . . Upon the sale of each parcel of marital real estate the net proceeds shall be split evenly between the parties. Should either parcel be sold and the net proceeds result in a deficiency being owed[,] then Husband shall be responsible for satisfying the deficiency on the parcel. Should either property be leased while awaiting sale, then Husband shall be entitled to the rental income from the property(ies) in order to offset the expenses for the properties. . . .

In his brief, Plaintiff argues that the trial court "did not distribute" the marital residences in its equitable distribution judgment and contends that the trial court's order, instead of providing for "a distribution of the marital homes by the trial court," "placed these two marital assets in a holding pattern." Plaintiff does not, however, explain the basis for his contention that the trial court "did not distribute" the marital real estate. For example, he has not argued that the trial court lacked authority to order the transfer or sale of real property in the course of entering an equitable distribution judgment or dispute the fact that, prior to the equitable distribution hearing, the parties agreed to sell the properties and signed a Memorandum of Judgment and Order to that effect on 9 November 2007. In addition, Plaintiff has not challenged the trial court's findings regarding the parties' real property or argued that the trial court erred by incorporating the parties' agreement concerning the sale of these properties into its equitable distribution order. In short, Plaintiff has simply failed to explain how the trial court's decision with respect to this issue rested upon an error of law, necessitating the conclusion that this aspect of Plaintiff's argument is without merit.

In addition, Plaintiff also asserts that the trial court's decision to require him to pay expenses associated with the properties pending their sale and to make up any deficiency upon sale imposed "improper burdens" upon him. "Ultimately, the court's equitable distribution award is reviewed for an abuse of discretion and will be reversed 'only upon a showing that it [is] so arbitrary that it could not have been the result of a reasoned decision.' " *Brackney*, 199 N.C. App. at 381, 682 S.E.2d at 405 (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)). Plaintiff has, however, failed to advance any argument tending to support a determination that the

trial court abused its discretion in the course of deciding to allocate these responsibilities to Plaintiff or to articulate any justification for his statement that the trial court committed an error of law by placing "improper burdens" upon him. Thus, this aspect of Plaintiff's argument lacks merit as well.

### E.  Pontiac Automobile

**[5]** At the equitable distribution hearing, Plaintiff testified that:

Q	What about that Pontiac G6?

A	That was a car that was bought for Claire's son, that I had about $2500 on the down payment for, that was purchased in June of 2005; late May or early June.

		. . . .

BY THE COURT:	Mr. Gardo, am I understanding then that the only payment Dr. Bodie is contending would be a marital debt, if anything, will be the $2500 down payment that was made on the vehicle sometime shortly before the date of separation; is that correct?

BY MR. GARDO: ˙ Yes, sir.

In his brief, Plaintiff argues that the trial court erred "in failing to value, classify, and distribute the G6 Pontiac." Once again, we conclude that Plaintiff's argument lacks merit.

"In equitable distribution proceedings, the party claiming a certain classification has the burden of showing, by a preponderance of the evidence, that the property is within the claimed classification." *Brackney*, 199 N.C. App. at 383, 682 S.E.2d at 406 (citing *Joyce v. Joyce*, 180 N.C. App. 647, 650, 637 S.E.2d 908, 911 (2006)). In this case, neither Plaintiff nor Defendant listed the automobile as a marital asset on their equitable distribution affidavits. At the equitable distribution hearing, Plaintiff's evidence regarding the Pontiac was limited to a request that the $2,500.00 down payment be treated as marital debt. Plaintiff has not, on appeal, made any argument specifically addressing the down payment that he allegedly provided in connection with this vehicle, explained how he was in any way prejudiced by the manner in which the trial court addressed any issue relating to this vehicle, or asserted that the trial court abused its discretion by failing to distribute the amount of the down payment to him. As a result, we conclude that Plaintiff has not shown that the trial court committed any error of law relating to the Pontiac that was purchased for Defendant's son.

## F. Adequacy of Equitable Distribution Order

[6] Finally, Plaintiff argues that, based upon "the reasons asserted" elsewhere in his brief, the trial court "failed to classify and value all of the marital and divisible property of the parties." We have previously addressed Plaintiff's contentions regarding the manner in which the trial court addressed specific items of property and debt elsewhere in this opinion. Although Plaintiff makes the generalized assertion that the equitable distribution judgment "fails to state the value of the distributable property," the only distributable assets which Plaintiff contends that the trial court failed to value were the Country Club property and the Soquilli property.

N.C. Gen. Stat. § 50-21(b) provides, in pertinent part, that, "[f]or purposes of equitable distribution, marital property shall be valued as of the date of the separation of the parties[.]" In its order, the trial court stated that:

> 3. . . . The parties stipulated certain real property owned by the parties on the Date of Separation . . . to be marital property. This real property includes the residence known as 25 Country Club Circle[.] . . . The Court finds that this property had a DOS Fair Market Value of $450,000 and carried indebtedness of $460,000.00 so that this property had a net DOS Fair Market Value . . . of [negative $10,000.00]. The parties own real property known as 98 Soquilli Drive[.] . . . The Court finds that this property had a DOS Fair Market Value of $255,000.00 and carried indebtedness of $241,115.38 so that this property had a DOS [Fair Market Value] of $13,884.62.

Plaintiff has neither challenged the values assigned to these properties nor articulated any reason for concluding that this finding did not constitute an adequate valuation of the properties in question. Moreover, as we have previously noted, Plaintiff has failed to describe how he was in any way prejudiced by the trial court's treatment of this issue. As we have already noted, the equitable distribution order provides for an equal division of the proceeds from the sale of the real property. Moreover, despite the fact that Plaintiff objects to the fact that the trial court failed to state the percentage to be distributed to each spouse, he has not explained how he has been prejudiced by the omission of this figure, which can readily be calculated using information contained in the findings and conclusions from the trial court's order. Finally, Plaintiff has not asserted that the equitable distribution order was unfair or an abuse of discretion. Thus, we conclude that Plaintiff's final argument is without merit.

## G. Equitable Distribution Conclusion

Thus, we conclude that the trial court's equitable distribution order should be reversed and that this case should be remanded to the trial court for additional findings regarding (1) the classification, value, and distribution of Plaintiff's 401(k) account, including the passive appreciation of that account between the date of separation and the date of distribution; (2) the classification, value, and distribution of the expenditures that Plaintiff made from the funds contained in his 401(k) account, including the extent to which and purposes for which he spent the passive appreciation of the 401(k) account between the date of separation and the date of distribution; (3) the classification, value, and distribution of Plaintiff's post-separation payments on marital debt, including the extent to which these payments were made with marital or separate funds; and (4) the classification, value, and distribution of the specific items of debt listed in Section II.C above. After making these additional findings, the trial court should make any conclusions of law and adjustments to its distributional decision necessitated by these additional findings of fact. The trial court may, in its discretion, agree to receive additional evidence concerning these unresolved issues. With those exceptions, however, the trial court's equitable distribution order should be, and hereby is, affirmed.

## III. Defendant's Appeal

**[7]** In challenging the trial court's dismissal of her alimony claim, Defendant asserts that the trial court erroneously failed to find that she was a "dependent spouse" for alimony-related purposes. More specifically, Defendant contends that the trial court failed to properly consider her accustomed standard of living during the marriage in making its alimony-related decision. We do not find Defendant's argument persuasive.

## A. Standard of Review

N.C. Gen. Stat. § 50-16.3A(a) provides that, "[i]n an action brought pursuant to Chapter 50 of the General Statutes, either party may move for alimony[,]" with the court being authorized to "award alimony to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors[.]" N.C. Gen. Stat. § 50-16.1A(2) defines a "dependent spouse" as "a spouse, whether husband or wife, who is actually substantially dependent upon the other spouse for his or her maintenance and sup-

port or is substantially in need of maintenance and support from the other spouse." " 'The burden of proving dependency is upon the spouse asserting the claim for alimony.' " *Williamson v. Williamson*, _____ N.C. App _____, _____ 719 S.E.2d 625, 627 (2011) (quoting *Loflin v. Loflin*, 25 N.C. App. 103, 103, 212 S.E.2d 403, 404 (1975).

" 'When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.' " *Williamson*, _____ N.C. App at _____, 719 S.E.2d at 626 (quoting *Oakley v. Oakley*, 165 N.C. App. 859, 861, 599 S.E.2d 925, 927 (2004) (internal quotation marks and citation omitted)). If the trial court's findings "are unchallenged on appeal, they are presumed correct and binding on this Court." *Lange v. Lange*, 167 N.C. App. 426, 430, 605 S.E.2d 732, 735 (2004) (citing *In re Beasley*, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001)). The same standard of review applies regardless of whether the trial court's order was entered after a full trial on the merits or whether, as in this case, the trial court dismissed the relevant claim at the conclusion of the evidence presented by the party seeking relief pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(b). *Bauman v. Woodlake Partners, LLC*, 199 N.C. App. 441, 445, 681 S.E.2d 819, 822-23 (2009).

### B. Discussion

"To be a dependent spouse, one must be either actually substantially dependent upon the other spouse or substantially in need of maintenance and support from the other spouse." *Barrett v. Barrett*, 140 N.C. App. 369, 371, 536 S.E.2d 642, 644 (2000) (internal quotation marks omitted). In *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980), the Court held that the term "actually substantially dependent"

> implies that the spouse seeking alimony must have actual dependence on the other in order to maintain the standard of living in the manner to which that spouse became accustomed during the last several years prior to separation. . . . Thus, to qualify as a 'dependent spouse' . . . one must be actually without means of providing for his or her accustomed standard of living.

" '[I]n other words, the court must determine whether one spouse would be unable to maintain his or her accustomed standard of living, established prior to separation, without financial contribution from the other.' " *Helms v. Helms*, 191 N.C. App. 19, 23-24, 661 S.E.2d 906, 909, (quoting *Vadala v. Vadala*, 145 N.C. App. 478, 481, 550 S.E.2d

536, 538 (2001)), *disc. review denied*, 362 N.C. 681, 670 S.E.2d 233, (2008). "It necessarily follows that the trial court must look at the parties' income and expenses in light of their accustomed standard of living." *Helms*, 191 N.C. App at 24, 661 S.E.2d at 910 (citing *Williams*, 299 N.C. at 182, 261 S.E.2d at 856 (stating that "[t]he incomes and expenses measured by the standard of living of the family as a unit must be evaluated from the evidence presented."). In addition, "[j]ust because one spouse is a dependent spouse does not automatically mean the other spouse is a supporting spouse. To be a supporting spouse, one must be the spouse upon whom the other spouse is either 'actually substantially dependent' or 'substantially in need of maintenance and support.' . . . A surplus of income over expenses is sufficient in and of itself to warrant a supporting spouse classification." *Barrett*, 140 N.C. App. at 373, 536 S.E.2d at 645 (citing Williams, 299 N.C. at 186, 261 S.E.2d at 857, and *Beaman v. Beaman*, 77 N.C. App. 717, 723, 336 S.E.2d 129, 133 (1985)).

In an attempt to demonstrate the validity of her alimony claim, Defendant offered evidence tending to show that her gross annual income exceeded $50,000.00, that her monthly net income was approximately $4,400.00, and that her monthly expenses were about $4,278.00 in 2009. As Defendant concedes in her brief, the "testimony at the Permanent Alimony hearing indicated that the Defendant-Appellant was able to meet her current living expenses, which included a $200.00 monthly contribution to a 'Child Savings Account' plan for the minor child." In its order, the trial court made unchallenged findings summarizing Defendant's testimony concerning her income and expenses and determined that "there is a surplus left to the defendant each month, after deducting all of her expenses from her net monthly income." As a result, the record adequately supported the trial court's determination that Defendant was not, in fact, a dependent spouse for alimony-related purposes.

In seeking to persuade us to reach a different result, Defendant points to evidence tending to show that she was required to maintain a lower standard of living than had been the case prior to the parties' separation. Defendant is correct in asserting that the fact that she is able to meet her current expenses does not necessarily preclude a determination that she is a dependent spouse entitled to receive alimony if the evidence shows that (1) she is unable to maintain the standard of living to which she was accustomed during her marriage and (2) Plaintiff had the means to pay her a sufficient amount of alimony to enable her to maintain her previous standard of living.

BODIE v. BODIE

[221 N.C. App. 29 (2012)]

However, we are not persuaded by Defendant's argument given the facts of this case. In support of this contention, Defendant argues that she "presented evidence of the standard of living that she enjoyed while married to [Plaintiff]" and "evidence that she could not afford that standard of living on her current income" and asserts that the trial court erroneously failed to make findings of fact regarding the parties' accustomed standard of living or Plaintiff's ability to provide an amount of alimony sufficient to "allow her to maintain the accustomed standard of living that she enjoyed while married[.]" We do not believe that the trial court erred by failing to award alimony to Defendant based upon this "change in lifestyles" theory.

The first problem with Defendant's "change in lifestyles" theory is that the record clearly shows that the "lifestyle" in question was not sustainable. When asked about the "lifestyle changes" that she experienced after separating from Plaintiff, however, Defendant testified that she no longer lived in the home that she had previously occupied, that she now had to work full time, that she could no longer afford pets, that she took fewer vacations, and that she had to adhere to a budget for her living expenses. Defendant did not dispute that the parties' previous standard of living had been "artificially maintained" by the "massive infusion of debt." For example, the record reflects that, in 2003, Plaintiff borrowed $50,000.00 from his 401(k) account to make payments on the couple's credit card debt. Based upon the evidence relating to this issue, the trial court made undisputed findings of fact to the effect that:

18. The defendant testified that since [the] date of separation that she has had a change in the lifestyle she had enjoyed during the last several years of her marriage[.] . . . However, the defendant admitted that during the last several years of the parties' marriage, their lifestyle had required ever increasing debt, and in the year 2003 the plaintiff had to borrow fifty thousand ($50,000.00) dollars from his retirement account to pay towards the parties' credit card debt.

19. The Court finds that during the last several years of the parties' marriage, their lifestyle was maintained by ever increasing debt, especially by use of credit cards. The debt which accompanied their lifestyle meant that the parties' standard of living could not be maintained in the future.

Defendant has cited no authority establishing that alimony may be properly awarded for the purpose of maintaining a "lifestyle" that rests upon such a shaky foundation, and we know of none.

Secondly, Defendant failed to present evidence tending to establish the standard of living that the parties would have been able to afford given their incomes and expenses during the marriage or the amount of money that would have been necessary to enable Defendant to maintain such an affordable lifestyle. In fact, when asked how much alimony she wanted, Defendant replied that she was "not really sure." Thus, for both of these reasons, the trial court did not err by determining that Defendant was not a dependent spouse.

Finally, Defendant failed to present any evidence tending to show that, at the time of the alimony hearing, Plaintiff was able to provide her with additional funds for the purpose of maintaining the standard of living that the parties could have afforded during their marriage. In fact, Defendant's counsel conceded that Plaintiff was in bankruptcy and that Defendant lacked the "ability to collect" any sums that were awarded in alimony. As a result, even if the trial court erred by failing to find that Defendant was a dependent spouse, Defendant was still not entitled to an award of alimony given the complete absence of any indication that Plaintiff was in a position to make alimony payments to Defendant. As a result, for all of these reasons, the trial court did not err by rejecting Defendant's alimony claim.

EQUITABLE DISTRIBUTION ORDER: AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

ALIMONY ORDER: AFFIRMED.

Judges BRYANT and ELMORE concur.