GEER, Judge.
Plaintiff Gregory H. Hassell appeals from orders relating to child custody, child support, equitable distribution, and alimony. On appeal, we agree with plaintiff's argument that the trial court erred in concluding that his 401K account was partially marital property. Because the record does not indicate that defendant met her burden of showing that the 401K account was marital property, and plaintiff has met his burden showing that the account is separate property, we reverse and remand the equitable distribution order. We also reverse and remand the child support and alimony orders to correct what appear to be clerical errors in the findings.
Facts
Plaintiff and defendant were married on 23 October 1999. On 4 March 2004, plaintiff and defendant had a son, Blaine. Blaine is the only son born of the marriage, although defendant has an older son, Brandon, from a prior marriage. On 22 June 2012, the parties separated. That same day, defendant filed a complaint and motion for a domestic violence protective order.
As a result of that complaint, on 28 June 2012, defendant and plaintiff entered into a consent civil restraining order pursuant to Rule 65 of the Rules of Civil Procedure. The restraining order prohibited plaintiff from directly contacting, assaulting, threatening, or abusing defendant. It also provided that plaintiff was entitled to supervised visitation with Blaine for eight hours every weekend, and it required plaintiff to pay $150.00 per month in support to defendant, as well as defendant's monthly household expenses, which included mortgage payments on the marital residence, utilities, insurance premiums, medical bills, cell phone bills, and credit card bills. On 20 July 2012, defendant filed a motion seeking an order holding plaintiff in contempt for alleged violations of the civil consent restraining order.
On 27 July 2012, plaintiff filed a complaint seeking divorce from bed and board, relief from child custody and child support, and equitable distribution. Defendant counterclaimed for alimony. On 25 October 2012, the trial court entered two orders, one addressing the issue of temporary custody of Blaine, and the other dismissing defendant's contempt motion. In both orders, the trial court found that despite entering into a consent civil restraining order, plaintiff continued to drive through defendant's neighborhood without justification, causing defendant stress and fear. The trial court further noted in the orders that, as a result of the temporary custody hearing, plaintiff was put "on notice" that defendant considered plaintiff's presence in her neighborhood to be "stressful and harassing." In the custody order, the trial court awarded temporary custody to defendant and granted plaintiff eight hours of unsupervised visitation every weekend.
At some point, plaintiff filed a motion to modify temporary custody, temporary child support, and post-separation support. On 5 April 2013, the trial court entered an order finding that a psychological evaluation for Blaine, which was prepared by Dr. Raymond E. Webster, was relevant to issues in this case, but it also ordered that the report remain confidential and under seal and that "[b]oth parties are prohibited from disclosing the contents of this report to anyone other than their attorneys, any mental health professional or expert witness anticipated to be called to testify[.]"
At a hearing on the motion to modify custody, child support, and post-separation support, the trial court received into evidence Dr. Webster's evaluation. The trial court's order on this motion to modify, entered 25 April 2013, stated that the "evaluation finds both parents to be capable of parenting the child and does not support a need for continued supervision of contact between Plaintiff and his minor child." The order required plaintiff to pay defendant $511.00 per month in child support and $725.00 per month in post-separation support.
On 2 July 2013, plaintiff filed a petition for bankruptcy under Chapter 13. On 29 and 30 October 2013, the trial court held a hearing on child custody, child support, equitable distribution, and alimony. On 15 January 2014 defendant moved for relief from the automatic stay provided under 11 U.S.C. § 362. On 24 February 2014, defendant was granted relief from the automatic stay, and the Bankruptcy Court allowed "an Order distributing the marital property of Movant and Petitioner [to be] adjudged, decreed, and enforced" with respect to plaintiff's equitable distribution claim.
On 7 April 2014, the trial court entered orders for permanent child custody, permanent child support, equitable distribution, and alimony. In the child custody order, the trial court made findings including the following facts. Before Blaine was born, defendant worked as a teacher's aide. Since Blaine's birth, defendant has been his primary caretaker. Until the parties' separation, defendant stayed home with Blaine and was not employed outside the home except for temporary part time work. Subsequent to defendant's complaint and motion for a domestic violence protective order and entry of the consent civil restraining order, defendant was granted temporary custody of Blaine on 25 October 2012, and plaintiff was granted supervised visitation for eight hours each weekend.
Since the separation, Blaine has lived primarily with defendant. Defendant has childcare available for Blaine, attends parent-teacher conferences, and enjoys an "appropriate, affectionate relationship" with Blaine. Defendant provides "patient and consistent help with reading" for Blaine, and she is "patient, attentive, and nurturing" toward him. Continuity in custodial care during the school year is important for Blaine's academic progress. While living with defendant, Blaine does well academically and socially and lives in a neighborhood in which he has friends with whom he plays and socializes. He is "happy, well-adjusted," and "thriving in the care of the Defendant." Defendant has an older son from another marriage, Brandon, with whom Blaine is very close.
The trial court noted that Dr. Webster's report "found both parents to be capable of parenting the child" and that plaintiff is a fit and proper parent. However, the trial court also found, in finding of fact 10, that plaintiff
has a controlling personality. Even after he was prohibited from harassing Mom in ... [ ]the Domestic Violence Complaint file[ ], he drove through her neighborhood and took other actions to cause her to feel that he was watching her and her movements. He gave his child (a then eight year old) a smart phone for Christmas. Smart phones are expensive to buy, costing several hundred dollars. His explanation for giving this age child such an expensive phone and incurring a significant monthly expense for its service contract, all of the time while the parties were under severe financial distress, was that the child wanted one because his older brother had one. The Court finds this explanation to be one of convenience. Unbeknownst to Mom, Dad had spy wear [sic] attached to the phone so that he could record, by audio and video, events going on in her house. He did so without her knowledge or consent. When this was discovered by Mom's older son Dad gave as his explanation that he was not trying to spy on Mom but was just trying to vicariously enjoy the child's excitement in opening Christmas presents. This explanation is untrue. The recording time for audio and video, on that phone extended for several weeks.... At the April 4 hearing in his opening statement Dad stated "I understand today from her attorney that she's got a job." Later as a part of the hearing, it became clear that Dad knew much earlier that she had gotten employment and specifically where she would be working. It appears clear that Dad has continued to attempt to follow Mom's activities, to learn what she does, when she does it, and with whom she associates by asking the child for this information. These actions are detrimental to the child's best interests.
The trial court determined that it was in the best interest of the child for defendant to have custody of Blaine. It, therefore, awarded permanent custody to defendant and set forth a visitation schedule for plaintiff.
In the child support order, the trial court found that plaintiff's gross monthly income was $4,382.28, including on-call time and overtime pay, and it found no reason to deviate from the child support guidelines. Based on the guidelines and plaintiff's income, the trial court awarded $597.00 per month in child support to defendant. In the alimony order, the trial court awarded $480.00 per month in alimony to defendant based on the same $4,382.28 gross monthly income figure. The alimony order provided that "it is equitable that an award of alimony last for three quarters of the length of the marriage. By then the child will be out of school and no longer in need of contributions for support by either party." The trial court ordered that the alimony award extend for 102 months, beginning 1 July 2014.
With regard to the equitable distribution order, the trial court in pertinent part classified a 401K retirement account in plaintiff's name as partially marital property. The trial court awarded defendant the marital residence, and plaintiff was awarded a distributive award from defendant in the amount of $11,767.70. Plaintiff was ordered to execute a quitclaim deed to defendant for all of his interest in the marital residence within 40 days of the entry of the equitable distribution order.
Plaintiff gave timely notice of appeal from those orders. On 29 April 2014, plaintiff apparently filed two motions pursuant to Rule 60 of the Rules of Civil Procedure seeking relief from the alimony and child support orders. Those motions are not included in the record on appeal. In those motions, plaintiff purportedly argued that the amount of alimony and child support he was required to pay was based on an erroneous determination of his income. On 8 August 2014, the trial court entered an "Indication of Ruling on Plaintiff's Rule 60 Motions" stating that it would be inclined to deny plaintiff's Rule 60 motions.
Motion to Strike and for Sanctions
First, we address defendant's motion for sanctions for violations of the Rules of Appellate Procedure regarding plaintiff's reply brief and inclusion of certain materials that plaintiff submitted to this Court in a supplement to the record on appeal. Defendant seeks to have stricken from the supplement the materials at issue, as well as references to them in plaintiff's appellant and reply briefs, as well as a portion of plaintiff's reply brief. Defendant also seeks attorneys' fees pursuant to Rule 34 of the Rules of Appellate Procedure.
"[A]n appellate court should impose a sanction of any type only when a party's nonjurisdictional rules violations rise to the level of a 'substantial failure' under N.C.R.App. P. 25 or a 'gross violation' under N.C.R.App. P. 34. In the absence of a substantial or gross violation, the Court should not impose any sanction at all, but rather 'the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible.' " Hardin v. KCS Int'l, Inc.,199 N.C.App. 687, 693, 682 S.E.2d 726, 731-32 (2009) (quoting Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.,362 N.C. 191, 199, 657 S.E.2d 361, 366 (2008) ). In determining whether a violation is gross or substantial, this Court should consider whether the violation "frustrate[s] the adversarial process." Dogwood Dev. & Mgmt. Co .,362 N.C. at 200, 657 S.E.2d at 366-67.
In the proposed record on appeal, rather than provide a verbatim transcript, plaintiff included a proposed narrative summary of the testimony offered. The proposed record also included an unsealed copy of Dr. Webster's psychological evaluation on Blaine. Plaintiff additionally included several documents, such as a purported paystub for plaintiff and a purported statement from plaintiff's retirement account, which, from the materials before us, do not appear to have been submitted to the trial court for consideration in this matter, if at all, until after plaintiff gave notice of this appeal.
On 25 June 2014, defendant filed objections to 24 paragraphs of the narrative testimony summary and requested several additional paragraphs. Defendant also objected to inclusion of the unsealed copy of Dr. Webster's report because "[n]either party objected nor have they requested that said seal be removed," and the report "would be available to any member of the public for review at the Clerk's office as well as available electronically at the N.C. Appellate Courts Electronic Filing Site." Defendant further objected to inclusion of various documents and to the titling of "Plaintiff's Exhibit 3," part of defendant's medical history, as defendant's "History of Depression." Plaintiff responded to these objections.
The trial court entered an order settling the record on appeal pursuant to Rule 11(c) of the Rules of Appellate Procedure on 8 August 2014. It ordered that certain portions of the narrative testimony summary be amended or excluded and that certain portions be added. It also found that "Plaintiff seeks to make public the medical report of Dr. Webster that this court had previously ordered sealed" and ordered that Dr. Webster's report remain under seal when transmitted to this Court for filing, that Plaintiff's Exhibit 3 not be mischaracterized as defendant's "History of Depression," and that plaintiff should include in the record the trial court's prospective indications on its rulings of plaintiff's Rule 60 motions. It ordered that various documents be excluded from the record on appeal and instead should be included "solely[ ] in a Supplement pursuant to Rule 11(c) of the North Carolina Rules of Appellate Procedure."
When filing the record with this Court, plaintiff included in the Rule 11(c) supplement the paystub, the retirement account statement, and his response to defendant's objections to the proposed record. Neither the paystub nor the retirement account statement had been submitted to the trial court. The trial court had also not authorized inclusion of plaintiff's response to defendant's objections. Plaintiff's brief and reply brief reference these documents.
Further, although a sealed copy of Dr. Webster's report was submitted to this Court, in portions of his appellant's brief, plaintiff reveals confidential information about defendant contained in that sealed report. Additionally, section 2 of plaintiff's reply brief raises, for the first time, the issue whether defendant engaged in improper ex parte communications with the trial court pending the equitable distribution hearing.
According to Rule 11(c) of the Rules of Appellate Procedure, the trial court's role in settling the record on appeal is to "determine whether a statement permitted by these rules is not factually accurate, to settle narrations of proceedings[,] ... and to determine whether the record accurately reflects the material filed[.]" Otherwise,
[i]f a party requests that an item be included in the record on appeal but not all other parties to the appeal agree to its inclusion, then that item shall not be included in the printed record on appeal, but shall be filed by the appellant with the printed record on appeal in ... a volume captioned "Rule 11(c) Supplement to the Printed Record on Appeal," along with any verbatim transcripts, narrations of proceedings, documentary exhibits, and other items that are filed pursuant to Rule 9(c) or 9(d); provided that any item not filed, served, submitted for consideration, or admitted,or for which no offer of proof was tendered, shall not be included. Subject to the additional requirements of Rule 28(d), items in the Rule 11(c) supplement may be cited and used by the parties as would items in the printed record on appeal.
Id.(emphasis added).
With respect to the Rule 11(c) supplement, although plaintiff contends that we "should consider the Appellant's paystub" because it clearly shows "errors and miscalculations" made by the trial court, plaintiff concedes that the paystub was not admitted into evidence at the 29 and 30 October hearing, and there is no indication that the retirement account statement was presented to the trial court for consideration at the hearing. Therefore, those documents cannot, under Rule 11(c), be included in a Rule 11(c) supplement.
Additionally, although plaintiff contends that inclusion of confidential findings in Dr. Webster's report concerning defendant was necessary "because [of] the Appellant's concern for his child's safety as a result of said [report's] findings" and that he did not "intentionally disclose[ ] any portion of Dr. Webster's Report to interfere with the Appellee's privacy[,]" because the parties' briefs are matters of public record, see State v. Horton,200 N.C.App. 74, 82, 682 S.E.2d 754, 760 (2009) ("[W]e emphasize that appellate briefs and records are public records."), the inclusion of that information in an unsealed portion of plaintiff's brief circumvented and contravened the trial court's order settling the record on appeal.
Further, Rule 28(h) of the Rules of Appellate Procedure limits the content of a reply brief to "a concise rebuttal of arguments set out in the appellee's brief[.]" Yet, section 2 of plaintiff's reply brief raises an issue that plaintiff did not raise in his appellant's brief: that defendant had impermissible ex parte communications with the trial court. See Hardin,199 N.C.App. at 708, 682 S.E.2d at 740 ("By raising his condition precedent argument for the first time in his reply brief, [appellant] has frustrated the adversarial process by depriving defendants of the opportunity to respond to his argument.")
We, therefore, order that the paystub and the retirement account statement, and any references to those documents, be stricken. See Orange Cnty. ex rel. Clayton v. Hamilton,213 N.C.App. 205, 207, 714 S.E.2d 184, 186 (2011) (noting prior Court of Appeals order had stricken party's Rule 11(c) supplement in response to opposing party's motion for sanctions); In re L.B.,181 N.C.App. 174, 185, 639 S.E.2d 23, 28 (2007) (striking affidavit in materials on appeal and references to it in brief where affidavit was not part of settled record). We also order that the references to Dr. Webster's report in plaintiff's appellant's brief and section 2 of his reply brief be stricken. See MacMillan v. MacMillan,--- N.C.App. ----, 771 S.E.2d 633, 2015 N.C.App. LEXIS 159, at *22 n. 3, 2015 WL 873178, at *8 n. 3 (2015) (unpublished) (noting that "[t]he typical sanction" for violation of Rule 28(h) is "to strike the reply brief and confine our decision to the materials properly before us"). However, in our discretion, we do not impose further sanctions upon plaintiff pursuant to Rule 34 of the Rules of Appellate Procedure. See Scott & Jones, Inc. v. Carlton Ins. Agency, Inc.,196 N.C.App. 290, 293, 677 S.E.2d 848, 850 (2009).
General Standard of Review
Turning to the merits of the appeal, plaintiff challenges the permanent custody, permanent child support, equitable distribution, and alimony orders. "As in other cases where the trial court is responsible for making findings of fact, '[t]he trial court's findings of fact are conclusive on appeal if supported by competent evidence, even when the record includes other evidence that might support contrary findings.' " Peters v. Pennington,210 N.C.App. 1, 27, 707 S.E.2d 724, 742 (2011) (quoting Static Control Components, Inc. v. Vogler,152 N.C.App. 599, 603, 568 S.E.2d 305, 308 (2002) ). "Evidentiary issues concerning credibility, contradictions, and discrepancies are for the trial court-as the fact-finder-to resolve[.]" Smallwood v. Smallwood,---N.C.App. ----, ----, 742 S.E.2d 814, 817 (2013). "The trial court's unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." Peltzer v. Peltzer,222 N.C.App. 784, 787, 732 S.E.2d 357, 360 (2012). This Court reviews a trial court's conclusions de novo. Carpenter v. Carpenter,--- N.C.App. ----, ----, 737 S.E.2d 783, 785 (2013).
Child Custody Order
Plaintiff challenges the child custody order by arguing that the trial court failed to sufficiently account for Blaine's welfare and best interest. "Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal." Everette v. Collins,176 N.C.App. 168, 171, 625 S.E.2d 796, 798 (2006). "An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child. In making the determination, the court shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party and shall make findings accordingly. An order for custody must include findings of fact which support the determination of what is in the best interest of the child." N.C. Gen.Stat. § 50-13.2(a) (2013).
Plaintiff first contends that there is no competent evidence supporting the finding that Dr. Webster's evaluation found defendant to be capable of parenting Blaine. The portions of plaintiff's brief containing these contentions, however, rely on confidential information contained in Dr. Webster's sealed report. Because we have stricken these portions of plaintiff's brief as a sanction for violating the trial court's order settling the record, we do not address whether Dr. Webster's report supports plaintiff's contention.
Plaintiff further supports his contention that defendant is not a fit parent by pointing to plaintiff's attempt at the hearing to discredit defendant's sister, Ivy Boyce, who testified as a witness for defendant at the 29 and 30 October hearing about the circumstances surrounding the incident that led to the filing of a domestic violence complaint against plaintiff. However, notwithstanding Ms. Boyce's testimony against plaintiff,the trial court found plaintiff to be a fit parent. In any event, even assuming that discrediting Ms. Boyce's testimony was relevant to defendant'sfitness as a parent rather than plaintiff's, the issue of credibility of witnesses is solely for the trial court, not this Court. Plaintiff further points to phone records that the trial court excluded that plaintiff asserts show that defendant's domestic violence complaint was malicious. However, plaintiff cites no authority suggesting that the trial court erred in excluding these records, and we, therefore, don't address this contention. SeeN.C.R.App. P. 28(b)(6).
Plaintiff also challenges finding of fact 10, quoted above, as unsupported by evidence. Specifically, plaintiff challenges the finding that he has been "trying to spy on" defendant by means of a cell phone he gave to Blaine. However, plaintiff attacks the trial court's rejection of plaintiff's explanation for giving Blaine a cell phone, which plaintiff stated was because Blaine wanted a cell phone like his brother had. Plaintiff's contention amounts to an attack on the trial court's determination that his stated reason for giving Blaine a cell phone was not credible, even though the trial court found otherwise. This is not a sufficient basis to disturb the trial court's findings. See Sloop v. Friberg,70 N.C.App. 690, 695, 320 S.E.2d 921, 925 (1984) ("[T]he trial court itself must determine the credibility of the evidence and what it establishes. Once the trial court has made such findings, they are conclusive if supported by any evidence, even if there is evidence contra." (internal citation omitted)).
Moreover, defendant testified at the hearing that plaintiff had installed spyware on the phone he gave to Blaine. Brandon testified that plaintiff had asked him to set up an internet connection to send plaintiff "a copy of everything the phone was doing[,]" although plaintiff did not initially tell Brandon that there was spyware installed on the phone. Brandon testified that he became suspicious when plaintiff told Blaine that Blaine "had to keep the phone with him all the time and especially when he went anywhere with Defendant."
Although plaintiff testified that he installed the spyware to try to enjoy Blaine's excitement as he opened Christmas gifts, plaintiff also testified that this software continuously transferred data to plaintiff for at least a week after Christmas without defendant's knowledge. Brandon also testified that while the spyware was active, it transferred "many, many hours of audio" to plaintiff. This evidence supports the trial court's findings that plaintiff's reasons for purchasing the cell phone for Blaine were not credible and that plaintiff was using this phone to spy on defendant.
With regard to finding of fact 10, plaintiff also contends that "[t]here was 'NO' testimony or evidence presented that the Plaintiff ever harassed the Defendant, went near the Defendant's residence, or even visited his neighbors of 12 years since the 'Show Cause for Contempt of Court of the Restraining Order[.]" The permanent custody order, however, does not state that plaintiff harassed defendant after defendant's motion for contempt was dismissed, but rather finds only that plaintiff took certain actions after being warned not to harass defendant following entry of the restraining order on 28 June 2012, which the trial court indicated, in its 25 October 2012 orders dismissing the motion to show cause and for temporary custody, it would consider in the permanent custody hearing.
In the trial court's orders for temporary custody and dismissing defendant's show cause motion, the trial court found that since the restraining order was entered on 28 June 2012, plaintiff frequently drove through defendant's neighborhood "caus[ing] her stress and fear" and "feel[ing] as if [plaintiff] is watching her and her movements." According to the trial court, the findings in these orders placed plaintiff on notice that his actions of watching defendant, if observed by her, would cause her to feel harassed. The findings pertaining to plaintiff's spying on defendant through Blaine's phone, therefore, supported a finding that defendant was harassed by plaintiff.
We further conclude that the trial court's findings support a determination that it is in Blaine's best interest to be in the primary custody of defendant. See In re McCraw Children,3 N.C.App. 390, 392, 165 S.E.2d 1, 3 (1969) (affirming that children's best interest was for mother to have primary custody where trial court found that mother " 'has been an excellent mother to her children[;] ... has been attentive to their health and needs and she has spent many hours playing with the children; she has taken them to Sunday School regularly; she has seen that they had friends to play with; she has regularly read to the children at bedtime' " and " 'the relationship between the children and their mother has been and is excellent' ").
Child Support Order
Plaintiff argues that the trial court erred in calculating the amount of child support to be paid to defendant. "Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." Leary v. Leary,152 N.C.App. 438, 441, 567 S.E.2d 834, 837 (2002). "The court shall determine the amount of child support payments by applying the presumptive guidelines established pursuant to subsection (c1) of this section. However, upon request of any party, the Court shall hear evidence, and from the evidence, find the facts relating to the reasonable needs of the child for support and the relative ability of each parent to provide support."N.C. Gen.Stat. § 50-13.4(c) (2013).
Plaintiff argues that the trial court erred in determining his ability to pay child support based on a gross income of $4,382.28 per month, including on-call and overtime pay. Plaintiff points to his financial affidavit as evidence in support of his contention. On this affidavit, within the box labeled "Details of Monthly Gross Income," one line states that plaintiff's "Current Monthly Gross Income before Deductions" is $3,935.64. The "Other" line item in the box includes "overtime" pay and is the only other item in the box assigned a value: $447.64. When adding this figure to the line item for plaintiff's current monthly gross income before deductions, the total is $4,383.28.
Because the trial court specifically noted that it found plaintiff's monthly income included his overtime pay, and the only evidence as to plaintiff's overtime pay for the relevant time period was in the financial affidavit, the $1.00 discrepancy between the figure supported by plaintiff's evidence and the figure listed in the child support order appears to be a clerical error. Nonetheless, "[w]hile we recognize that this may be a mere clerical error, we must ... reverse and remand to allow" the trial court "to resolve the inconsistencies." Mayfield v. Hannifin,174 N.C.App. 386, 401, 621 S.E.2d 243, 253 (2005).
We note that plaintiff contends that the financial affidavit was ambiguous and that the affidavit should be read as including the $447.64 figure as part of the $3,935.64 figure, for a total gross monthly income of $3,935.64. Plaintiff additionally points to the paystub he included in the Rule 11(c) supplement as clarifying the ambiguity. However, any ambiguity in the reading of the financial affidavit was a discrepancy in the evidence which the trial court was entitled to resolve. See Sorey v. Sorey,--- N.C.App. ----, ----, 757 S.E.2d 518, 521 (2014) ("[I]t is the trial court's duty to resolve [evidentiary] conflicts and ambiguity in its findings."). Further, because references to the paystub are stricken from plaintiff's materials in this appeal, we do not consider whether the paystub supports plaintiff's contention.
Equitable Distribution Order
Plaintiff challenges the trial court's classification and distribution of assets in the equitable distribution order. "Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with the statute, will establish an abuse of discretion." Wiencek-Adams v. Adams,331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992) (internal citations omitted).
"Upon application of a party for an equitable distribution, the trial court shall determine what is the marital property and shall provide for an equitable distribution of the marital property ... in accordance with the provisions of [N.C. Gen.Stat. § 5020 (Cum.Supp.1992) ]. In so doing, the court must conduct a three-step analysis. First, the court must identify and classify all property as marital or separate based upon the evidence presented regarding the nature of the asset. Second, the court must determine the net value of the marital property as of the date of the parties' separation, with net value being market value, if any, less the amount of any encumbrances. Third, the court must distribute the marital property in an equitable manner."Smith v. Smith,111 N.C.App. 460, 470, 433 S.E.2d 196, 202-03 (1993) (internal citations and quotation marks omitted), rev'd in part on other grounds,336 N.C. 575, 444 S.E.2d 420 (1994) ; N.C. Gen.Stat. § 50-20(a) (2013).
First, plaintiff contends that the trial court erred in finding that he filed for bankruptcy and had the marital residence mortgage payments modified pending the equitable distribution proceeding without first discussing these things with defendant. Although plaintiff points to the parties' stipulation that defendant's attorney received an email from plaintiff about his intent to file for bankruptcy, the stipulation does not indicate that plaintiff discussed modifying the mortgage amount with defendant or her attorney as part of the bankruptcy process. Plaintiff has failed to show that this finding is unsupported by competent evidence. Moreover, as the trial court found that this fact "does not justify a differing amount of property distribution in Wife's favor[,]" plaintiff has failed to demonstrate on appeal how this finding was relevant to the trial court's equitable distribution determination.
Next, plaintiff contends that the trial court erred in classifying his 401K as partially marital property rather than entirely separate property. Marital property includes "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned," N.C. Gen.Stat. § 50-20(b)(1), but does not include property determined to be separate property under N.C. Gen.Stat. § 50-20(b)(2) or divisible property under N.C. Gen.Stat. § 50-20(b)(4).
"Separate property" is defined as
all real and personal property acquired by a spouse before marriage or acquired by a spouse by devise, descent, or gift during the course of the marriage. However, property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance. Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance. The increase in value in separate property and the income derived from separate property shall be considered separate property. All professional licenses and business licenses which would terminate on transfer shall be considered separate property.
N.C. Gen.Stat. § 50-20(b)(2).
The burdens of proof for showing that property is either marital or separate property are well established. "The burden of showing the property to be marital is on the party seeking to classify the asset as marital and the burden of showing the property to be separate is on the party seeking to classify the asset as separate." Atkins v. Atkins,102 N.C.App. 199, 206, 401 S.E.2d 784, 787 (1991). "If this burden [of demonstrating that property is marital property] is met and a party claims the property to be separate, that party has the burden of showing the property is separate." Id.,401 S.E.2d at 787-88. "A party may satisfy her burden by a preponderance of the evidence." Id.,401 S.E.2d at 787. However, "[i]f the party claiming the property to be marital does not meet his burden of showing that the property was acquired during the course of the marriage, the property does not immediately become, as a matter of law, separate property. The party claiming the property as his separate property must meet the burden of establishing by the preponderance of the evidence that the property was 'acquired by [him] before marriage ...,' N.C.G.S. § 50-20(b)(2), or acquired by him after separation with his own separate funds...." Id.at 206-07, 401 S.E.2d at 788.
Here, the relevant evidence in the record concerning the classification of the 401K is in the amended narrative testimony summary:
Plaintiff testified current funds in Plaintiff's 401K Plan totaled $2,130.78 at the time of the parties' separation in June 2012 and was earned prior to Plaintiff and Defendant having been married while Plaintiff was employed with the Plymouth Police Department. Plaintiff testified that he left the Plymouth Police Department in 1995 and began working for the state in Probation and Parole. He testified that he and Defendant were not married until October 23, 1999. Plaintiff testified that he withdrew $13,000.00 from his 401K as a down payment for the land and home.
With this evidence, plaintiff met his burden of showing the property to be separate property, N.C. Gen.Stat. § 50-20(b)(2), and therefore the burden was on defendant to show that the property was marital.
Had defendant met her burden that the property was acquired within the marriage, then the discrepancy between plaintiff's and defendant's evidence would be one of fact for the trial court to resolve. There is, however, no evidence in the record suggesting that any contributions were made to the 401K during the marriage, before the date of the separation of the parties, and, therefore, the trial court erred in classifying the 401K as marital property. Because of this error, we reverse the equitable distribution order and remand to the trial court to classify the 401K as separate property. See Ross v. Ross,--- N.C.App. ----, ----, 749 S.E.2d 84, 90 (2013) (reversing equitable distribution order for mischaracterizing a portion of post-separation payments by wife as divisible property and remanding for reduction in credit wife received for making such payments).
Plaintiff further contends that the trial court erred in requiring plaintiff to tender to defendant a quitclaim deed within 40 days of the equitable distribution order, without requiring that the parties go through an escrowed closing process. However, plaintiff cites no authority in support of his contention that this constitutes an abuse of discretion, and it is deemed abandoned. N.C .R.App. P. 28(b)(6).
Finally, plaintiff contends that the trial court erred by failing to adjust the distribution in his favor for the mortgage payments he made on the marital residence while defendant was occupying it. " 'A spouse is entitled to some consideration, in an equitable distribution proceeding, for any post-separation payments made by that spouse (from non-marital or separate funds) for the benefit of the marital estate.' ... For that reason, the trial court may, after classifying post-separation debt payments as divisible property,distribute the payments unequally." Bodie v. Bodie,221 N.C.App. 29, 34, 727 S.E.2d 11, 15-16 (2012) (emphasis added) (quoting Walter v. Walter,149 N.C.App. 723, 731, 561 S.E.2d 571, 576-77 (2002) ).
"Divisible property" is defined as
a. All appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, except that appreciation or diminution in value which is the result of postseparation actions or activities of a spouse shall not be treated as divisible property.
b. All property, property rights, or any portion thereof received after the date of separation but before the date of distribution that was acquired as a result of the efforts of either spouse during the marriage and before the date of separation, including, but not limited to, commissions, bonuses, and contractual rights.
c. Passive income from marital property received after the date of separation, including, but not limited to, interest and dividends.
d. Passive increases and passive decreases in marital debt and financing charges and interest related to marital debt.
N.C. Gen.Stat. § 50-20(b)(4). Divisible property is to be divided equally among the spouses unless the trial court determines otherwise. N.C. Gen.Stat. § 50-20(c).
Defendant contends that the trial court should not have considered plaintiff's post-separation mortgage payments in the equitable distribution action because he had already been ordered by the trial court to make those payments. However, because there was no evidence, and the trial court made no findings, as to the source of the funds used to make the post-separation mortgage payments, we are unable to determine whether the trial court should have classified those payments as divisible property and made an equal or equitable distribution of those payments.
Therefore, we remand for findings as to the source of funds that plaintiff used to pay the post-separation mortgage payments. See Shope v. Pennington,--- N.C.App. ----, ----, 753 S.E.2d 688, 690, 691 (2014) ("[T]he trial court distributed all of [the $511,522.69 of divisible payments on a marital debt] to defendant without making specific findings as to the source of those funds.... Therefore, we remand this matter back to the trial court to make additional findings of fact which identify the source of the funds used to pay down the marital debt[.]"); Bodie,221 N.C.App. at 37, 727 S.E.2d at 17 (reversing and remanding equitable distribution order to make findings regarding classification of post-separation debt payments made in part pursuant to court order where trial court's findings did not otherwise support classification of those payments).
Alimony Order
"The amount of alimony is determined by the trial judge in the exercise of his sound discretion and is not reviewable on appeal in the absence of an abuse of discretion." Quick v. Quick,305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982). Pursuant to N.C. Gen.Stat. § 50-16.3A(a) (2013), a "[trial] court shall award alimony to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors ."
The duration of the award may be for a specified or for an indefinite term. In determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors, including:
(1) The marital misconduct of either of the spouses. Nothing herein shall prevent a court from considering incidents of post date-ofseparation marital misconduct as corroborating evidence supporting other evidence that marital misconduct occurred during the marriage and prior to date of separation;
(2) The relative earnings and earning capacities of the spouses;
(3) The ages and the physical, mental, and emotional conditions of the spouses;
(4) The amount and sources of earned and unearned income of both spouses, including, but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or others;
(5) The duration of the marriage;
(6) The contribution by one spouse to the education, training, or increased earning power of the other spouse;
(7) The extent to which the earning power, expenses, or financial obligations of a spouse will be affected by reason of serving as the custodian of a minor child;
(8) The standard of living of the spouses established during the marriage;
(9) The relative education of the spouses and the time necessary to acquire sufficient education or training to enable the spouse seeking alimony to find employment to meet his or her reasonable economic needs;
(10) The relative assets and liabilities of the spouses and the relative debt service requirements of the spouses, including legal obligations of support;
(11) The property brought to the marriage by either spouse;
(12) The contribution of a spouse as homemaker;
(13) The relative needs of the spouses;
(14) The federal, State, and local tax ramifications of the alimony award;
(15) Any other factor relating to the economic circumstances of the parties that the court finds to be just and proper.
(16) The fact that income received by either party was previously considered by the court in determining the value of a marital or divisible asset in an equitable distribution of the parties' marital or divisible property.
N.C. Gen.Stat. § 50-16.3A(b). N.C. Gen.Stat. § 50-16.3A(c) further requires the trial court to "set forth the reasons for its award or denial of alimony and, if making an award, the reasons for its amount, duration, and manner of payment.... [T]he court shall make a specific finding of fact on each of the factors in subsection (b) of this section if evidence is offered on that factor ."
Plaintiff first contends that the trial court based its calculation of alimony owed to defendant on the same incorrect determination of plaintiff's monthly income-$4,382.28 rather than $3,935.64-that the trial court used to determine his child support payments. As with the child support order, although the evidence supports a determination that plaintiff's gross monthly income was $4,383.28, the $4,382.28 figure in the order appears to be a clerical error for which we must nonetheless reverse and remand the alimony order for the trial court to address. Mayfield,174 N.C.App. at 401, 621 S.E.2d at 253.
We note that plaintiff also contends that the trial court erred in failing to address the tax consequences for plaintiff for having to change his tax status from married to single. Plaintiff does not point to anything in the record submitted to this Court showing that he presented evidence of these tax consequences to the trial court. SeeN.C. Gen.Stat. § 50-16.3A(c). We, therefore, do not address that issue.
Further, plaintiff contends that the trial court erred in failing to explain its rationale for the alimony award and duration. The alimony order, however, makes findings as to the following factors: the parties' incomes and expenses; plaintiff's presumptive tax benefit from making alimony payments and defendant's presumptive increased tax liability from receiving alimony payments; the fact that defendant suffers an income deficit because of her reasonable expenses, while plaintiff enjoys a surplus; the fact that defendant did not work during Blaine's preschool years to be Blaine's primary caregiver; the fact that prior to and after separation, plaintiff exhibited "controlling type behaviors" toward defendant; the parties' earning capacities and their ages, along with defendant's ability to find employment to meet her needs; and the fact that the parties purchased a marital residence together.
Beyond his monthly income figure, plaintiff does not challenge any of the reasons given for the amount and duration of the alimony award or otherwise specifically argue that the trial court should have made additional findings based on the evidence before it. We hold that the trial court's findings amply addressed the reasons underlying its decision regarding the amount and duration of the alimony award.
Conclusion
We affirm the trial court's child custody order. However, we reverse the court's equitable distribution order and remand for reclassification of the 401K and deduction of the amount of the 401K from the total amount of marital assets to be distributed between the parties. We also remand the equitable distribution order for findings as to the source of funds plaintiff used to make post-separation payments on the marital residence mortgage. Additionally, we remand the child support and alimony orders to address the $1.00 inconsistency between the evidence and findings regarding plaintiff's monthly income.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
Judges STEELMAN and STEPHENS concur.
Report per Rule 30(e).
Opinion
Appeal by plaintiff from orders entered 7 April 2014 by Judge David A. Leech in Washington County District Court. Heard in the Court of Appeals 4 December 2014.